**Earl Wayne WYATT, Plaintiff–Appellant,**

v.

**Cal A. TERHUNE; Suzan Hubbard, Warden, Defendants–Appellees.**

**No. 00–16568.**

United States Court of Appeals, Ninth Circuit.

Dec. 31, 2002.

Earl Wayne Wyatt, Ione, CA, Grace Won, Esq., Farella, Braun and Martel, San Francisco, CA, for Plaintiff–Appellant.

Kathleen E. Gnekow, Esq., Paul A. Bernardino, Esq., Sacramento, CA, for Defendant–Appellee.

Before BRIGHT,* B. FLETCHER and FISHER, Circuit Judges.

**ORDER**

v.

**Cal A. TERHUNE; Suzan Hubbard, Warden, Defendants–Appellees.**

**No. 00–16568.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 4, 2001.

Filed Jan. 2, 2003.

---

* The Honorable Myron H. Bright, Senior Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

Grace K. Won, Farella Braun & Martel LLP, San Francisco, California, for the plaintiff-appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Paul D. Gifford, Senior Assistant Attorney General, Michael J. Williams, Paul A. Bernardino, Deputy Attorneys General, Sacramento, California, for the defendants-appellees.

Before BRIGHT,* B. FLETCHER and FISHER, Circuit Judges.

FISHER, Circuit Judge.

Appellant Earl Wayne Wyatt, a Rastafarian inmate, filed this § 1983 action challenging the California Department of Corrections' hair length regulations as a violation of his constitutional and statutory rights to free exercise of religion and equal protection of the laws. This appeal concerns three procedural issues rather than the merits of Wyatt's claims.

In addressing Wyatt's First Amendment claim, the magistrate judge assigned to the case served on the parties a copy of his findings of fact from a different case challenging the grooming regulations and directed defendants to file a summary judgment motion. He did not explain to Wyatt, a pro se prisoner, the significance of the findings, that he intended to take judicial notice of the findings in Wyatt's case or whether or how Wyatt could dispute the findings in the summary judgment process. Once defendants filed their summary judgment motion, the magistrate judge indeed took extensive judicial notice of his prior findings and recommended that the district court grant defendants summary judgment; the district court adopted the findings and recommendation of the magistrate judge in full. On appeal, Wyatt challenges the magistrate judge's novel procedure as an improper use of judicial notice. We do not decide whether use of the prior findings—at least in some fashion—was improper use of judicial notice. Rather, we conclude the procedure adopted here was flawed because it did not meet the requirements of our fair notice doctrine, under which the district court bears the responsibility of assuring that a pro se prisoner litigant receives meaningful notice of summary judgment procedures and requirements. We therefore reverse the summary judgment on that ground.

The district court also dismissed Wyatt's religious discrimination claim under a provision of the Religious Freedom Restoration Act (RFRA) that had been declared unconstitutional. While appeal of that dis-

---

* The Honorable Myron H. Bright, Senior Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

missal was pending, Congress enacted the Religious Land Use and Institutionalized Persons Act (RLUIPA), which replaces the void provisions of RFRA. We have discretion to remand a case to the district court for further consideration when new laws likely to influence a decision have become effective during the pendency of an appeal. On remand, the district court should grant Wyatt leave to amend his complaint to include a claim under RLUIPA.

The district court also granted defendants' motion to dismiss Wyatt's equal protection claim under Rule 12(b) of the Federal Rules of Civil Procedure, ruling that Wyatt had failed to demonstrate exhaustion of the inmate appeals process before filing suit, as required by the Prison Litigation Reform Act (PLRA). Whether the PLRA exhaustion requirement is a defense or a pleading requirement is an issue of first impression in this Circuit. We adopt the rule of the majority of circuits and hold that it is a defense that must be raised and proved by the defendant. The burden of establishing nonexhaustion therefore falls on defendants. Because defendants did not meet this burden, we also reverse the dismissal of Wyatt's equal protection claim.

### Facts and Procedural Background

Wyatt is an inmate incarcerated at Mule Creek State Prison in Ione, California, serving a 17-year sentence for voluntary manslaughter. As a tenet of his Rastafarian religion, Wyatt wears his hair in dread-locks. Defendants do not dispute that Wyatt's religious beliefs are sincerely held or that dreadlocks are a means of practicing the Rastafarian religion. Seeking temporary and permanent injunctive relief, Wyatt filed this § 1983 action in pro per against Cal Terhune and Susan Hubbard ("defendants"), wardens of the prison, challenging state prison grooming regulations, Cal.Code Regs. tit. 15, § 3062(e), that require him to cut his hair.[1] Female inmates are not subject to the same regulations.[2] Wyatt has been disciplined by prison officials for refusing to comply with the regulations. Wyatt alleged that the regulations violate his First Amendment right to free exercise of religion, his Fourteenth Amendment right to equal protection of the laws and his statutory free exercise right under the Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb et seq. The district court adopted the findings and recommendations of the magistrate judge and dismissed Wyatt's RFRA claim because RFRA has been declared unconstitutional as applied to states, and dismissed Wyatt's equal protection claim for failure to exhaust administrative remedies as required by the PLRA, 42 U.S.C. § 1997e(a). Adopting the findings and recommendation of the magistrate judge, who in turn had taken judicial notice of findings of fact from a similar case, the court then granted summary judgment on Wyatt's remaining First Amendment claim, ruling that the grooming regulations were rationally related to legitimate penological interests.

1. The regulations provide in part: "A male inmate's hair shall not be longer than three inches and shall not extend over the eyebrows or below the top of the shirt collar while standing upright. Hair shall be cut around the ears, and sideburns shall be neatly trimmed, and shall not extend below the mid-point of the ear. The width of the sideburns shall not exceed one and one-half inches and shall not include flared ends." Cal.Code Regs. tit. 15,

§ 3062(e). The grooming regulations were promulgated by the California Department of Corrections as an emergency regulation on October 16, 1997.

2. A "female inmate's hair may be any length"; if "hair is long, it shall be worn up in a neat, plain style, which does not draw undue attention to the inmate." Id. § 3062(f).

We have jurisdiction under 28 U.S.C. § 1291 and we reverse.

## I. First Amendment Claim

■ By way of an order dated February 4, 2000, the magistrate judge served a copy of his findings and recommendations in *Toyebo v. Terhune*, No. S–98–0292 (E.D.Cal. Aug. 28, 1990), on the parties and directed defendants to file a motion for summary judgment with respect to Wyatt's First Amendment claim.[3] *Toyebo*, which the magistrate judge previously had decided, involved an unsuccessful challenge to the grooming regulations by a group of Native American inmates. The magistrate judge's order did not say anything about taking judicial notice of the *Toyebo* findings or how they might otherwise be relevant to a summary judgment motion. The February 4 order did, however, refer the parties to a June 14, 1999, order of the magistrate judge that included an explanation of how Wyatt, a pro se prisoner, could oppose summary judgment and stated that facts that were not disputed would be accepted as true.

Defendants filed the invited motion for summary judgment. They attached a copy of the *Toyebo* findings as an exhibit, but did not explain in their motion whether or how the findings were being proffered as evidence. At that time, Wyatt did not object to defendants' attachment of the *Toyebo* findings as an exhibit, nor did he submit evidence refuting them.

In a written report to the district court judge recommending summary judgment, the magistrate judge took extensive judicial notice of the *Toyebo* findings. Relying on the *Toyebo* findings, the magistrate judge adopted as undisputed facts: (1) the list of defendants' justifications for the grooming regulations; (2) defendants' testimony regarding the adverse impact of accommodating religion by providing an exception to the regulations; and (3) the finding that the increase in size of the prison population had escalated the number of searches that must be conducted.[4] Based almost entirely on these judicially noticed findings, the magistrate judge applied the four-factor analysis for alleged violations of prisoners' constitutional rights under *Turner v. Safley*, 482 U.S. 78, 89–91, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), deemed Wyatt's case controlled by *Friedman v. Arizona*, 912 F.2d 328 (9th Cir. 1990) (upholding prison grooming regulations prohibiting facial hair), and recommended that the district court enter summary judgment in favor of defendants. The district court adopted the magistrate judge's recommendation.

Although Wyatt never formally objected to judicial notice of the *Toyebo* findings, he

---

**3.** The February 4, 2000 order states in relevant part:

In another action filed in this court, *Toyebo v. Terhune*, No. CIV S–98–0292 GEB JFM P, this court found that the plaintiffs in that action were unlikely to succeed on the merits of their First Amendment challenge to the [California Corrections Department] grooming regulations. A copy of the findings and recommendations filed in the *Toyebo* case, and a copy of the order of the district court adopting those findings and recommendations is appended to this order.

In light of the findings in *Toyebo*, defendants will be directed to file a motion for summary

judgment. Said motion shall be briefed in accordance with the provisions of Local Rule 78–230(m) and this court's order filed June 14, 1999.

**4.** The magistrate judge took judicial notice of several other facts from *Toyebo* as well, including the penalties imposed on an inmate who fails to comply with the grooming regulations and that no religious exception exists for the grooming regulations. These facts, however, were independently supported by other evidence in the record of this case, including the regulations themselves.

did state in his objections to the magistrate judge's report: .

> The Magistrate furthermore relies upon the ruling in [*Toyebo*]. Plaintiff's objections are based upon the fact the court has failed to take into consideration plaintiff's action on a case by case basis for which differs from that of *Friedman* and *Toyebo*, surrounding essential issues and arguments that differ in this action before the court.

■ Represented by counsel in this appeal, Wyatt contends that the magistrate judge's use of the *Toyebo* findings constituted an improper procedural shortcut and that judicial notice was improper under Rule 201 of the Federal Rules of Evidence. Although we appreciate that the magistrate judge was attempting to utilize an expeditious procedure, we have held that taking judicial notice of findings of fact from another case exceeds the limits of Rule 201. *See M/V Am. Queen v. San Diego Marine Constr. Corp.*, 708 F.2d 1483, 1491 (9th Cir.1983) (stating general rule that "a court may not take judicial notice of proceedings or records in another cause so as to supply, without formal introduction of evidence, facts essential to support a contention in a cause then before it").[5] We need not resolve this appeal on that basis, however, because we conclude that the novel summary judgment procedure the magistrate judge adopted, without clear instructions to Wyatt on how to navigate the procedure, runs afoul of our decision in *Rand v. Rowland*, 154 F.3d 952 (9th Cir.1998) (en banc), and requires reversal.

■ Under our precedents, the district court bears the responsibility of assuring that a pro se prisoner litigant receives fair notice of summary judgment requirements. *Rand*, 154 F.3d at 960. Because of "the complexity of the summary judgment rule combined with the lack of legal sophistication of the pro se prisoner," the prisoner must obtain notice "phrased in ordinary, understandable language calculated to apprise an unsophisticated prisoner of his or her rights and obligations under Rule 56." *Id.; see Klingele v. Eikenberry*, 849 F.2d 409, 411–12 (9th Cir.1988) (holding that district courts are obligated to advise prisoner pro per litigants of Federal Rule of Civil Procedure 56 requirements).[6]

---

5. Factual findings in one case ordinarily are not admissible for their truth in another case through judicial notice. *See* 21 Charles Alan Wright & Kenneth A. Graham, Jr., Federal Practice & Procedure § 5106 (Supp.2001) (stating "courts should distinguish between taking judicial notice of the truth of some extrajudicial fact recited in a court record and the use of those facts for some purpose that does not depend on the truth of the facts recited"). In agreement with *M/V Am. Queen*, other circuits have held that a court may not take judicial notice of findings of fact from a different case for their truth. *Taylor v. Charter Med. Corp.*, 162 F.3d 827, 830 (5th Cir. 1998); *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir.1998); *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1082–83 & n. 6 (7th Cir.1997); *Orix Credit Alliance, Inc. v. Delta Res., Inc. (In re Delta Res., Inc.)*, 54 F.3d 722, 726 (11th Cir.1995); *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir.1994); *Holloway v. Lockhart*, 813 F.2d 874, 878–79 (8th Cir.1987).

6. *Rand* requires that the prisoner be "informed of his or her right to file counter-affidavits or other responsive evidentiary materials and be alerted to the fact that failure to do so might result in the entry of summary judgment against the prisoner." 154 F.3d at 960. The pro se prisoner must be "informed of the effect of losing on summary judgment." *Id.* The notice also should state that if the pro se prisoner fails to controvert the moving party with opposing counter-affidavits or other evidence, the moving party's evidence might be taken as the truth, and final judgment may be entered against the prisoner without a trial. *Id.* at 960–61.

Assuming that the magistrate judge's June 14, 1999 order provided Wyatt with fair notice pursuant to *Rand*, the magistrate judge's February 4, 2000 order undermined that earlier notice. The latter order does not explain what purpose the *Toyebo* findings would serve, whether or how Wyatt could refute them or how they were to be reconciled with the June 14 *Rand* notice. Nor could Wyatt turn to the June 14 order for answers to these questions. That order makes no reference to any procedure to be followed when the court serves on the pro se prisoner judicial findings of fact from another case. Although the order explains the procedure Wyatt could follow to "contradict *defendant's* evidence with counteraffidavits or other admissible evidence" (emphasis added), it offers no clear guidance on whether Wyatt could refute the *Toyebo* findings and, if so, how.

 A *Rand* notice is ineffective when a subsequent order injects renewed uncertainty and complexity into the summary judgment procedure, creating the potential for those harms that our fair notice rule strives to avoid. When the magistrate judge issued his order of February 4, he was obligated by the principles we affirmed in *Rand* to provide Wyatt with fair notice of the significance of his act of serving the *Toyebo* findings on the parties, Wyatt's right to refute them, how to refute them and the consequences of his failure to do so.

Under the right circumstances and with a proper regard for the fairness of the proceedings, a district court is not barred from utilizing fair and proper procedures that may economize judicial resources. Pro se prison litigants, however, should not be saddled with findings from prior cases where they had no say in the development of the record or in the strategic decisions from which that record sprang. Because the magistrate judge did not take the steps required by *Rand*, we hold that the summary judgment procedure was in error and reversal is required.[7]

## II. RLUIPA Claim

In his complaint, Wyatt alleged a violation of the Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb–1. The district court dismissed the claim because *City of Boerne v. Flores*, 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997), had declared RFRA unconstitutional as applied to the states. Subsequently, Congress enacted the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc–1, which provides rights similar to those delineated in RFRA. Wyatt contends that his RFRA claim should be construed as a RLUIPA claim and reinstated. Defendants argue that RLUIPA was not pled or argued below and, therefore, is not before this court.

 Although we construe a pro se prisoner's pleadings liberally, *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir.2000), we decline to construe Wyatt's RFRA claim as a RLUIPA claim or to consider the merits of Wyatt's RLUIPA claim for

---

7. For similar reasons, we express concern with the magistrate judge's refusal to grant Wyatt's informal request, contained in his opposition to defendants' motion for summary judgment, for a stay pending discovery. The magistrate judge dismissed Wyatt's request for a stay on the ground that Wyatt had not complied with Rule 56(f). The court's June 14, 1999 order suggests that a request for a stay, whether or not in conformity with Rule 56(f), would be considered by the court, stating, "[i]f there is some good reason why such facts are not available to plaintiff when required to oppose such a motion, the court will consider a request to postpone considering defendant's motion." Wyatt's request "to stay defendants['] motion until plaintiff has been [served] with the requested discovery [responses by] defendants" appears to have complied with the June 14 order.

the first time on appeal. Nonetheless, the district court on remand should grant Wyatt leave to amend his complaint to plead a claim under RLUIPA. "This court may remand a case to the district court for further consideration when new cases or laws that are likely to influence the decision have become effective after the initial consideration." *White Mountain Apache Tribe v. Arizona*, 649 F.2d 1274, 1285–86 (9th Cir.1981).

## III. Equal Protection Claim

In his § 1983 complaint, Wyatt alleged that the prison grooming regulations violate the Equal Protection Clause of the Fourteenth Amendment because they apply to men but not to women. The district court dismissed this claim for failure to satisfy the exhaustion requirement of the Prison Litigation Reform Act (PLRA), which states:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

### A. *Procedural History*

Defendants raised nonexhaustion in a Rule 12 motion to dismiss, as well as pleading it as an affirmative defense. The motion argued for dismissal for lack of subject matter jurisdiction under Rule 12(b)(1) and also argued that "regardless" of whether nonexhaustion deprived the court of jurisdiction, Wyatt's complaint should be dismissed for failure to exhaust available prison remedies. Defendants now urge us to construe this motion not only as a 12(b)(1) motion to dismiss for want of subject matter jurisdiction but also as a nonenumerated Rule 12 motion to dismiss for failure to exhaust administrative remedies.

Defendants' arguments to the district court in support of dismissal reflected uncertainty over how PLRA exhaustion should be characterized. First, defendants argued as if PLRA exhaustion imposes a heightened pleading requirement on prisoners, asserting that Wyatt's equal protection claim should be dismissed because his complaint "has only provided evidence of appeal through the second level. No Director's Level appeal decision has been attached to the complaint." Alternatively, defendants appear to have perceived exhaustion as a defense that must be raised and proved by defendants. To that end, they produced two documents for the purpose of establishing that Wyatt did not exhaust administrative remedies. One is an affidavit from a prison official explaining the inmate appeals process in California.[8] It describes a three-level procedure, the third and final step in which is the Director's Level appeal. The affidavit, however, does not contain any information about whether Wyatt took advantage of any or all of these steps. Notably, it does not deny that Wyatt filed a Director's Level appeal. Defendants produced a second document, which they refer to as Wyatt's "Appeal Record." According to defendants, the Appeal Record shows that Wyatt has filed only one Director's Level appeal since January 1, 1994, and that the one appeal "was for an issue other than the grooming standard and [was] submitted in January 1998." The document, however, is ambiguous on its face. It does not state that it is a complete accounting of inmate appeals filed by Wyatt, or indicate

---

8. For a description of California's three-tiered inmate appeal process, see *Alexandroai v. Cal. Dep't of Corr.*, 985 F.Supp. 968, 969–70 (S.D.Cal.1997), and Cal.Code Regs. tit. 15, §§ 3084.1(a) and 3084.5.

the subject of the one appeal listed. Because the affidavit also fails to explain the significance of the Appeal Record (or even to authenticate it), nothing in the record establishes that the document is what defendants say it is or that it shows what defendants contend it shows.

On this record, the district court—adopting the magistrate judge's findings and recommendations—dismissed Wyatt's equal protection claim for nonexhaustion. The court did not make clear, however, under what provision of the federal rules it was ordering dismissal, or explain its reason for finding nonexhaustion.

█ To determine whether the district court's dismissal of Wyatt's equal protection claim was in error, we must address two issues: first, whether exhaustion under the PLRA imposes a pleading requirement on the plaintiff or creates a defense that must be raised and proved by the defendant; and, second, the appropriate procedural mechanism for adjudicating the existence or absence of exhaustion. Our review is, for the most part, de novo. *See Big Bear Lodging Ass'n v. Snow Summit, Inc.,* 182 F.3d 1096, 1101 (9th Cir.1999) (motion to dismiss); *Alexander v. Glickman,* 139 F.3d 733, 735 (9th Cir.1998) (questions of statutory interpretation). As explained below, we review the district court's factual determinations for clear error.

**B.** *Pleading Requirement or Defense?*

█ The first question is whether the PLRA's exhaustion requirement imposes a pleading requirement on the prisoner or creates a defense that must be raised and proved by the defendant.[9] Those circuits to have considered this question have reached different answers. The Sixth Circuit imposes the burden on the prisoner. *Brown v. Toombs,* 139 F.3d 1102, 1104 (6th Cir.1998) (per curiam). To satisfy § 1997e(a) in the Sixth Circuit, the prisoner must allege that he exhausted all available administrative remedies and should attach to his complaint the administrative decision, if it is available, showing the disposition of the administrative claim. *Id.* Five other circuits—the Second, Third, Seventh, Eighth and D.C.—have described exhaustion as an affirmative defense that must be raised and proved by the defendant. *See Ray v. Kertes,* 285 F.3d 287, 295 (3d Cir.2002); *Foulk v. Charrier,* 262 F.3d 687, 697 (8th Cir.2001); *Jackson v. District of Columbia,* 254 F.3d 262, 267 (D.C.Cir. 2001); *Massey v. Helman,* 196 F.3d 727, 735 (7th Cir.1999); *Jenkins v. Haubert,* 179 F.3d 19, 28–29 (2d Cir.1999).

█ Like these five circuits, we do not believe the PLRA imposes a pleading requirement. In reaching a contrary conclusion, the Sixth Circuit emphasized the strong language of § 1997e(a), which begins "[n]o action shall be brought." *Toombs,* 139 F.3d at 1104. Such language, however, is inconclusive. As one court has observed, "[t]he language of statutes of limitations tend[s] to be equally imperative," *Jackson v. District of Columbia,* 89 F.Supp.2d 48, 56 (D.D.C.2000), *vacated and remanded on other grounds by* 254 F.3d 262 (D.C.Cir.2001), yet it is well-settled that statutes of limitations are affirmative defenses, not pleading requirements. *E.g.,* Fed.R.Civ.P. 8(c); *see also Perez v. Wisconsin Dep't of Corr.,* 182 F.3d 532, 536 (7th Cir.1999) (likening ex-

---

**9.** We recognize a third possibility. A statutory exhaustion requirement may be jurisdictional. *See, e.g., B.K.B. v. Maui Police Dep't,* 276 F.3d 1091, 1099–1100 (9th Cir.2002) (treating the exhaustion requirement under Title VII as jurisdictional). As we have held previously, however, the PLRA exhaustion requirement does not affect our subject matter jurisdiction. *See Rumbles v. Hill,* 182 F.3d 1064, 1068 (9th Cir.1999). Accordingly, our Title VII jurisprudence does not affect the analysis here.

haustion under the PLRA to a statute of limitations).

Indeed, as the Supreme Court recently affirmed, we will not impose heightened pleading requirements where Congress has not expressly instructed us to do so. *See Swierkiewicz v. Sorema,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (holding that a complaint in an employment discrimination lawsuit need not contain specific facts establishing a prima facie case of discrimination under the *McDonnell Douglas* standard). Writing for a unanimous Court, Justice Thomas explained that "Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions." *Id.* at 998.[10] In rejecting the lower court's imposition of a heightened pleading requirement, the Court observed that Rule 8(a)'s simplified pleading standard must be read in conjunction with Rule 8(e)(1), which states that "[n]o technical forms of pleading or motions are required." *Id.* The "limited exceptions" are those that are *explicit,* such as Rule 9(b), which expressly "provides for greater particularity in all aver-

ments of fraud or mistake." *Id.*[11] Thus, "[a] requirement of greater specificity for particular claims is a result that 'must be obtained by the process of amending the Federal Rules, and not by judicial interpretation.'" *Id.* at 999 (quoting *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993)).

We do not discern in § 1997e(a) the kind of express congressional command referred to in *Swierkiewicz* and exemplified by Rule 9(b).[12] Legislatures know how to indicate that exhaustion is a pleading requirement when they want to. *See, e.g., Walton v. Nalco Chem. Co.,* 272 F.3d 13, 20–21 (1st Cir.2001) ("Section 4622 [of the Maine Human Rights Act], by its plain language, precludes any characterization of the [administrative] exhaustion issue as a mere affirmative defense, since it explicitly states that the plaintiff, rather than the defendant, must 'plead[ ]' the requisite [administrative] filing.") (footnotes omitted). The PLRA, of course, contains no such command. *See Ray,* 285 F.3d at 297

---

**10.** Rule 8(a) provides that a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief."

**11.** Rule 9(b) states: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."

**12.** In *Toombs,* 139 F.3d at 1104, the Sixth Circuit characterized PLRA exhaustion as a "condition precedent" to suit within the meaning of the special pleading requirement of Rule 9(c). *See* Fed.R.Civ.P. 9(c) ("In pleading the performance or occurrence of conditions precedent, it is sufficient to aver generally that all conditions precedent have been performed or have occurred. A denial of performance or occurrence shall be made specifically and with particularity."). We do not think that Rule 9(c) has any application here, however. *See, e.g., EEOC v. Guar. Sav.*

& *Loan Ass'n,* 369 F.Supp. 36, 37 (D.Ala. 1973) (holding that Rule 9(c) applies to conditions precedent to liability but not to matters that affect jurisdiction); *Snyder v. Le Roy Dyal Co.,* 1 F.R.D. 362, 362 (S.D.N.Y.1940) (holding that Rule 9(c) applies to conditions going to create liability or those which construct a legal capacity to sue but does not require any allegation that procedural requirements have been fulfilled); 5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1303 (stating that Rule 9(c) "applies only to conditions 'precedent,' not to performance of procedural requirements for filing the claim"). Even if PLRA exhaustion were a condition precedent within the meaning of Rule 9(c), we would not be compelled to agree with the Sixth Circuit. As we have said previously, "Rule 9(c) does not expressly require that performance of conditions be pled, it merely sets forth the manner in which such pleadings should be made." *Kiernan v. Zurich Cos.,* 150 F.3d 1120, 1124 (9th Cir.1998).

(holding that the PLRA does not impose a heightened pleading requirement and stating that "courts should narrowly interpret statutory language to avoid heightened pleading standards").

Moreover, imposing a technical pleading requirement without express congressional authorization would be contrary to the liberal approach we take to pleadings by pro se prisoners. *See, e.g., United States v. Ten Thousand Dollars ($10,000.00) in U.S. Currency,* 860 F.2d 1511, 1513 (9th Cir. 1988) ("We have consistently held in this circuit that courts should liberally construe the pleadings and efforts of pro se litigants, particularly 'where highly technical requirements are involved.' ") (quoting *Garaux v. Pulley,* 739 F.2d 437, 439 (9th Cir.1984)). In addition, prison officials are likely to have greater legal expertise and, as important, superior access to prison administrative records in comparison to prisoners, especially, as is often the case, when prisoners have moved from one facility to another. We agree with the Third Circuit, which has observed that "it is considerably easier for a prison administrator to show a failure to exhaust than it is for a prisoner to demonstrate exhaustion." *Ray,* 285 F.3d at 295.

We therefore agree with five other circuits that nonexhaustion under § 1997e(a) of the PLRA does not impose a pleading requirement. We hold that § 1997e(a) creates a defense—defendants have the burden of raising and proving the absence of exhaustion.[13]

### C. *The Proper Pretrial Motion for Establishing Nonexhaustion*

We next address the form of pretrial motion to be used to resolve the State's contention that the prisoner has failed to exhaust his administrative remedies. In this Circuit, we have held that the failure to exhaust nonjudicial remedies that are not jurisdictional should be treated as a matter in abatement, which is subject to an unenumerated Rule 12(b) motion rather than a motion for summary judgment. *See Ritza v. Int'l Longshoremen's & Warehousemen's Union,* 837 F.2d 365, 368 (9th Cir.1988) (per curiam); *see also Inlandboatmens Union of the Pac. v. Dutra Group,* 279 F.3d 1075, 1078 n. 1, 1083–84 (9th Cir.2002); *Stauffer Chem. Co. v. FDA,* 670 F.2d 106, 108 (9th Cir.1982); *Studio Elec. Technicians Local 728 v. Int'l Photographers of the Motion Picture Indus. Local 659,* 598 F.2d 551, 552 n. 2 (9th Cir.1979). These decisions are based on the general principle that "[s]ummary judgment is on the merits," *Stauffer Chem.,* 670 F.2d at 108, whereas "dismissal of an action on the ground of failure to exhaust administrative remedies is not on the merits." *Heath v. Cleary,* 708 F.2d 1376, 1380 n. 4 (9th Cir.1983). In deciding a motion to dismiss for a failure to exhaust

---

**13.** Defendants contend that characterizing PLRA exhaustion as a defense is irreconcilable with *Booth v. Churner,* 532 U.S. 731, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001), and *McNeil v. United States,* 508 U.S. 106, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993). We disagree. *Booth* held that administrative remedies must be exhausted even where the plaintiff seeks only monetary relief and the inmate grievance procedure offers no such relief. 532 U.S. at 733–34, 121 S.Ct. 1819. The opinion did not address the procedural posture of the case or comment on whether PLRA exhaustion is a pleading requirement or

defense. *McNeil* held that the district court properly dismissed a claim under the Federal Tort Claims Act (FTCA) where the suit was filed before completion of the administrative review process but where the process was completed before the motion to dismiss was filed. 508 U.S. at 110, 113 S.Ct. 1980. Again, the Court did not address whether the FTCA's exhaustion requirement was a defense or a pleading requirement. Moreover, the case involved an exhaustion requirement that the lower court determined was jurisdictional in nature, whereas PLRA exhaustion is not a jurisdictional requirement.

nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact. *See Ritza,* 837 F.2d at 369.[14] If the district court concludes that the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal of the claim without prejudice. *See id.* at 368 & n. 3.

### D. *Application to the Facts Here*

■ It is not clear that the district court dismissed Wyatt's equal protection claim employing the proper legal standard or reached a factual finding that was not clearly erroneous. Defendants argued in the district court, consistent with the Sixth Circuit's position, that the burden of establishing exhaustion fell on Wyatt and that Wyatt failed to attach documents establishing exhaustion to his complaint. We have rejected treating PLRA exhaustion as a pleading requirement or requiring exhaustion to be established by the complaint. Accordingly, if the district court dismissed Wyatt's claim on this ground, we must reverse.

■ Assuming in the alternative that the district court relied on the documentary evidence produced by defendants, the court's factual finding that Wyatt failed to exhaust nonjudicial remedies was clearly erroneous. *See Ritza,* 837 F.2d at 369 (holding that we will review the district court's factual determinations for clear error and its application of substantive law de novo). The documents produced by defendants are inadequate to establish that Wyatt failed to exhaust California's administrative review process. The affidavit, although describing the inmate appeals process, does not state whether or not Wyatt has exhausted his appeals. There is no evidence in the record establishing that the "Appeal Record" is what defendants say it is. We cannot tell from the record whether that document is a complete record of Wyatt's Director's Level appeals. Nor does the record establish that the one appeal shown on the document relates to a subject other than the prison grooming regulations challenged here. Defendants have failed to meet their burden of establishing that Wyatt did not exhaust administrative remedies.[15]

■ A third possibility is that the district court inferred from Wyatt's making a futility argument that he conceded nonexhaustion. A prisoner's concession to nonexhaustion is a valid ground for dismissal, so long as no exception to exhaustion applies. The record is not clear, however, that Wyatt has conceded that he did not exhaust administrative remedies.

We therefore vacate the order dismissing Wyatt's equal protection claim and remand for further proceedings.

### Conclusion

We reverse the summary judgment on Wyatt's First Amendment claim and the Rule 12 dismissal of Wyatt's equal protection claim as unexhausted and remand for further proceedings. On remand, the district court also should grant Wyatt leave to

---

**14.** For the reasons discussed in Section I of this opinion, if the district court looks beyond the pleadings to a factual record in deciding the motion to dismiss for failure to exhaust—a procedure closely analogous to summary judgment—then the court must assure that Wyatt has fair notice of his opportunity to develop a record.

**15.** The documents produced by defendants are inadequate. Further factual development of the record is required. We note that both parties will be able to offer additional evidence on remand. Wyatt's supplemental brief to this Court states that he has a letter from the Director of Prisons that confirms he has exhausted his remedies to the third and final level. This and any other evidence should be evaluated by the district court.

amend his complaint to include a claim under RLUIPA.

**REVERSED and REMANDED.**