RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
ELECTRONIC CITATION: 2003 FED App. 0193P (6th Cir.)
File Name: 03a0193p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

JERRY L. COX,
        *Plaintiff-Appellee,*

        *v.*                       No. 02-5102

JAN MAYER, DR.,
        *Defendant-Appellant.*

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 99-00285—Robert L. Echols, Chief District Judge.

Argued: May 1, 2003

Decided and Filed: June 11, 2003

Before: MOORE and ROGERS, Circuit Judges; HOOD,
District Judge.*

_____

**COUNSEL**

**ARGUED:** Derrick C. Smith, HOWELL & FISHER,
Nashville, Tennessee, for Appellant. Jennifer Gingery Cook,
MILLER & MARTIN, Nashville, Tennessee, for Appellee.

_____

* The Honorable Joseph M. Hood, United States District Judge for the
Eastern District of Kentucky, sitting by designation.

---

**ON BRIEF:** Derrick C. Smith, HOWELL & FISHER,
Nashville, Tennessee, for Appellant. Jennifer Gingery Cook,
MILLER & MARTIN, Nashville, Tennessee, for Appellee.

    HOOD, D. J., delivered the opinion of the court, in which
ROGERS, J., joined. MOORE, J. (pp. 12-15), delivered a
separate dissenting opinion.

_____

**OPINION**

_____

    HOOD, District Judge. Defendant prison doctor appeals
from the district court's Order excusing the failure of
plaintiff, a prisoner when he filed this action, to exhaust his
administrative remedies as required under 42 U.S.C.
§ 1997e(a) of the Prison Litigation Reform Act ("PLRA").
Jurisdiction is proper under 28 U.S.C. § 1292(b), pursuant to
which the district court certified its ruling for interlocutory
appeal.

## I.    Factual and Procedural History

    The thrust of plaintiff's complaint - which asserts a claim
under 42 U.S.C. § 1983 - is that, while a prisoner at a federal
special needs facility, he was assaulted by prison officials and
forcibly medicated upon the order of defendant, the prison
doctor. Plaintiff claims that the incident left him with a
herniated disc in his lower back, which required surgery.

    Following the incident, plaintiff submitted an inmate
grievance form. He did not hear back from prison officials,
however.

    Nearly six months later and while still a prisoner, plaintiff
sued defendant and several unidentified prison staff members
in U.S. District Court for the Middle District of Tennessee.
Subsequent to the filing of the complaint, plaintiff was
released from prison. In response to the complaint, defendant
moved to dismiss on the ground that plaintiff failed to exhaust

his administrative remedies. In this regard, defendant relied upon the affidavit of the prison official in charge of the inmate grievance process. This official's affidavit stated that her records indicated that plaintiff had not filed a grievance.

Defendant's motion was assigned to a magistrate judge for report and recommendation. Finding that there existed a genuine issue of material fact as to whether plaintiff had, in fact, submitted a grievance form, the magistrate judge recommended that defendant's motion to dismiss for failure to exhaust be denied.

The district court, however, rejected the magistrate's recommendation. Looking closely at the prison grievance procedure guidelines, the district court noted that "[e]ven if Plaintiff did file an initial grievance, he was required to continue to the next step in the grievance process within the time frame set forth in [prison] regulations if no response was received from prison officials." The district court pointed out that, in effect, plaintiff had abandoned the grievance process and that, therefore, there was no genuine issue as to exhaustion. Accordingly, the district court dismissed plaintiff's claims without prejudice.

Subsequently, plaintiff filed a motion for reconsideration in which he informed the court that he was no longer a prisoner. Because he was no longer a prisoner and could simply reinitiate his lawsuit, plaintiff argued, a dismissal without prejudice made little sense - no longer in prison, plaintiff had no remedies to exhaust.

The district court granted plaintiff's motion for reconsideration. It did so because "[u]nder [such] circumstances, where Plaintiff could immediately refile his claims without exhausting administrative remedies, it seems that judicial economy would not be served by the dismissal of Plaintiff's complaint." In support of his ruling, the district court relied primarily on the reasoning of the dissent in *Harris v. Garner,* 216 F.3d 970 (11th Cir. 2000)(en banc), a case that presented the same issue but in the context of a different subsection of the PLRA (42 U.S.C. § 1997e(e)).

## II. Discussion

This appeal presents a single issue. That issue is whether a federal district court must dismiss an action filed by a plaintiff prisoner who does not exhaust his administrative remedies before filing suit (as is required under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a)), where the prisoner was subsequently released from prison such that, when the court considers the motion to dismiss for failure to exhaust, plaintiff is no longer a prisoner. This is a question of first impression in this circuit - or in any circuit, for that matter.

This appeal presents purely a question of law. Therefore, the district court's conclusion is reviewed de novo. *Wright v. Morris,* 111 F.3d 414 (6th Cir. 1997).

### A.

As should any court considering the application of a statute, we begin with the plain language of the text. That text is straightforward and unmistakable, and not prone to ambiguity. It reads:

(a) Applicability of Administrative Remedies
No action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

A natural reading of the statute suggests that its application requires consideration of three simple questions. First, is plaintiff "a prisoner confined in [a] jail, prison, or other correctional facility?" If not, the statute is inapplicable. If so, a second question must be considered: Is the plaintiff suing under § 1983 respecting "prison conditions?" If not, the statute is inapplicable. If so, a third question must be considered: Did plaintiff exhaust "such administrative

remedies as [were] available" before plaintiff "brought" his action? If question three is answered in the negative, plaintiff is in violation of the statute and the court is required to dismiss plaintiff's suit.

In the instant case, when plaintiff "brought" his case he was undisputably a prisoner.[1] Also, given the expansive reading of the term "prison conditions" by both the United States Supreme Court and this court, *see, e.g. Porter v. Nussle,* 534 U.S. 516 (2002)("[W]e hold that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."); *Freeman v. Francis,* 196 F.3d 641, 643-45, (6th Cir. 1999)(holding that the statute applies to specific acts such as excessive force claims and assaults, and stating that "[a] broad exhaustion requirement that includes excessive force claims effectuates [the statutory purpose] and maximizes the benefits of requiring prisoners to use prison grievance procedures before coming to federal court"), there can be no question but that plaintiff's suit concerns "prison conditions." Because (1) plaintiff was a prisoner when he "brought" his suit, and (2) plaintiff's suit implicates "prison conditions," § 1997e(a) applies and plaintiff was required to exhaust any available administrative remedies before he filed

---

[1]For an extended explanation of why "to bring" means "to file," see *Harris v. Garner,* 216 F.3d 970, 973-80 (11th Cir. 2000)(en banc)(construing a different subsection of the same statute).

suit. He failed to do so,[2] however, and consequently his suit must be dismissed.

## B.

Plaintiff's principal argument in favor of the legitimacy of the district court's ruling excusing plaintiff's failure to exhaust regards the perceived inconsistency between the application of the statute in this particular instance and what he views as the statute's policy underpinnings. On these facts, plaintiff argues, to apply the statute as written would be to contravene the statutory purpose because, as a dismissal for failure to exhaust is without prejudice, *see, e.g. Wyatt v. Terhune,* 315 F.3d 1108 (9th Cir. 2003), the net effect of such a dismissal would be simply the reinitiation of plaintiff's lawsuit. But to require him to reinitiate his lawsuit after it has already been pending for some time, plaintiff urges, would be to contribute to the very problem the PLRA was enacted to combat: waste of judicial time and resources. Stated differently and more plainly, plaintiff argues that to apply the statute as written in this instance would be to contravene legislative intent. In this regard, plaintiff's argument is not without intuitive appeal.

But the argument does not stand up to scrutiny. There are two reasons.

---

[2]Because plaintiff did initially avail himself of the prison grievance procedures - and only filed suit when he did not hear back from the prison authorities - plaintiff at the district court level argued in the alternative that he had, in fact, exhausted his administrative remedies. But, as the district court noted, under the prison grievance procedure plaintiff was required to pursue his grievance to the next level even though he hadn't heard back from the prison, and in failing to so pursue his grievance he effectively abandoned the administrative process. Thus, the district court's ruling from which defendant appeals is that plaintiff failed to exhaust his administrative remedies but that such failure should be excused. Plaintiff's counsel erased any lingering doubt on this point when at oral argument she verified that plaintiff claims only that his subsequent release from prison absolved him of his duty to exhaust - not that he had, in fact, exhausted.

First - and most significant - even assuming that the statutory purpose may be characterized as plaintiff suggests, because the statute is unambiguous it is inappropriate for us even to consider it. In directing the court's attention to legislative intent, plaintiff overlooks the well-established and long-recognized rule that, where a statute is free of ambiguity, it is to be applied as written. The Supreme Court has instructed ad nauseam: "[I]n interpreting a statute a court should always turn first to one, cardinal canon before all others," which is "that courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Conn. Nat'l Bank v. Germain,* 503 U.S. 249, 253-54 (1992). The Court has made clear that "[w]hen the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete." *Id.* at 254. *See also United States v. Gonzales,* 520 U.S. 1, 6 (1997)("Given the straightforward statutory command, there is no reason to resort to legislative history."); *Ratzlaf v. United States,* 510 U.S. 135, 147-48 (1994)("[W]e do not resort to legislative history to cloud a statutory text that is clear."); *Barnhill v. Johnson,* 503 U.S. 393, 401 (1992)("To begin, we note that appeals to statutory history are well taken only to resolve statutory ambiguity.").

Second, we are not so sure that plaintiff's characterization of the statutory purpose - to advance the interests of judicial economy - is perfectly precise. To be sure, requiring exhaustion does improve judicial economy: after all, mandatory initial resort to prison grievance procedures - even in instances where prisoners seek only monetary relief, *see Booth v. Churner,* 532 U.S. 731, 739 (2001) - provides a forum for resolution that may render resort to the courts unnecessary. In this way the court system is unburdened. Still, the legislative history of § 1997e(a) suggests that judicial economy was a tangential, but not primary concern of the statute. Rather, "Congress was primarily concerned about the rising number of lawsuits filed by prisoners and the perception that most of these suits were frivolous." *Cruz v. Jordan,* 80 F.Supp.2d 109, 113 (S.D.N.Y. 1999). *See, e.g.* 141 Cong. Rec. S14408-01, *S14414 (daily ed. Sept. 27,

1995)(statement of Senator Dole)(noting that prisoner suits increased from 6,600 in 1975 to over 39,000 in 1994 and included claims for "insufficient storage locker space, a defective haircut by a prison barber, the failure of prison officials to invite a prisoner to a pizza party for a departing prison employee, and ... being served chunky peanut butter instead of the creamy variety."); 141 Cong. Rec. S7498-01, *S7526 (daily ed. May 25, 1995)(statement of Senator Kyl)(stating that in 1994, prisoners brought more than one-fourth of all civil suits filed in the United States District Courts); Bernard D. Reams, Jr. & William H. Manz, *A Legislative History of the Prison Litigation Reform Act of 1996,* Pub. L. No. 104-134, 110 Stat. 1321, Doc. 33, at 61 (noting that the short title given to the House measure containing the PLRA was "Stopping Abusive Prisoner Lawsuits").

The two goals are similar but not identical, and the instant case highlights the difference between them. For example, given that plaintiff's action has been pending in the district court for some time, and that to dismiss at this stage would have no net effect (because the dismissal is without prejudice, plaintiff could simply re-file), such a dismissal would indeed be judicially uneconomical.[3] And yet, on the other hand, to stamp with the judicial imprimatur a district court's decision to excuse the statutory duty to exhaust would be not only to usurp the legislative function but also to prevent potentially frivolous suits from meeting an administrative death (as the statute intended). Viewed differently, the problem is one of incentive: though dismissal without prejudice may well be judicially uneconomical *in the instant case,* to excuse plaintiff's duty to exhaust in every instance would encourage all prisoners nearing completion of their sentences to eschew the grievance process in favor of the courts. Such prisoners

---

[3]Our policy discussion makes the assumption that a prisoner who has not exhausted administrative remedies while in prison may nonetheless sue after being released from prison. We make this assumption only for the sake of argument, and do not decide the issue one way or the other. *See McGee v. United States,* 402 U.S. 479, 487-91 (1971).

would know that, no longer confined at the time the courts addressed their case, their failure to exhaust could be excused.

## C.

The court would note that, while the discrete issue presented by the instant case is one of first impression, its holding today is in keeping with recent Supreme Court and circuit precedent. Significantly, both the Supreme Court and this court have recently declined to carve out exceptions to the plain language of § 1997e(a). *See, e.g., Porter v. Nussle,* 534 U.S. 516 (2002)(holding that the statutory reference to "prison conditions" should be construed to include episodic events - such as excessive force claims - as well as general circumstances); *Freeman v. Francis,* 196 F.3d 641 (6th Cir. 1999)(stating that "[t]he plain language of the statute makes exhaustion a precondition to filing an action in federal court, and holding that the statute is not satisfied where administrative remedies are exhausted *during* the pendency of a federal suit).

In particular, the court's holding today finds support in the Supreme Court's recent decision in *Booth v. Churner,* 532 U.S. 731 (2001). In *Booth,* the Court - resolving a circuit split - held that § 1997e(a) requires administrative exhaustion even where the grievance process does not provide for monetary relief and such relief is the only relief sought. Albeit in dicta, the Court traced the pre-PLRA history of § 1997e(a), noting that the PLRA made several marked revisions. While little was added, it was what was omitted that was of significance.

Before § 1997e(a) was amended by the Act of 1995, a court had discretion (though no obligation) to require a state inmate to exhaust "such ... remedies as are available," but only if those remedies were "plain, speedy, and effective." 42 U.S.C. § 1997e(a)(1994 ed.). That scheme, however, is now a thing of the past, for the amendments eliminated both the discretion to dispense with administrative exhaustion and the condition that the remedy be "plain, speedy, and effective" before exhaustion could be required.

*Id.* at 739. Also, the Court noted that it was a fair inference that, in removing the word "effective" - the very term emphasized by the Court in its pre-PLRA case law, *see McCarthy v. Madigan,* 503 U.S. 140 (1992) - Congress found fault with the Court's result in the early cases. *Booth,* 532 U.S. at 740. "This inference," wrote the Court, "is, to say the least, also consistent with Congress's elimination of the requirement that administrative procedures must satisfy certain 'minimum acceptable standards' of fairness and effectiveness before inmates can be required to exhaust them, and the elimination of courts' discretion to excuse exhaustion when it would not be 'appropriate and in the interests of justice.'" *Id.* at 740 n.5 (comparing 42 U.S.C. § 1997e(a)(1994 ed., Supp. V) with 42 U.S.C. § 1997e(a)(1994 ed.)).

Though taking pains to make clear that it was deciding only the issue before it, the Supreme Court in *Booth* swept broadly in its analysis. Wrote the Court: "[The Court] will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise." *Id.* at 741 n.6. And so, neither shall we.

## D.

The court addresses one final issue. It is suggested that plaintiff's failure to exhaust is "cured" by application of Federal Rule of Civil Procedure 15(d), which pertains to supplemental pleadings. That rule reads, in relevant part:

Upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented. Permission may be granted even though the original pleading is defective in its statement of a claim for relief or defense.

Fed. R. Civ. P. 15(d).

As an initial matter, the court notes that - whatever application the rule might once have had - such application has been waived. Plaintiff did not raise the issue before the district court, nor did the district court cite Rule 15(d) as justification for its ruling. Moreover, by its very terms the Rule finds application only "upon motion of a party"; in the instant case, however, plaintiff made no such motion.

But, even assuming that plaintiff *had* made such a motion, the outcome would be no different. This is because a procedural rule "cannot overrule a substantive requirement or restriction contained in a statute (especially a subsequently enacted one)." *Harris v. Garner,* 216 F.3d 970 (11th Cir. 2000)(en banc)(declining - under similar circumstances - to apply Rule 15(d) to excuse plaintiff's failure to comply with an analogous provision of the PLRA, § 1997e(e)).

### III. Conclusion

For the reasons outlined above, the decision of the district could is **REVERSED** and **REMANDED** with directions to dismiss the complaint without prejudice.

---

### DISSENT

---

KAREN NELSON MOORE, Circuit Judge, dissenting. After the district court ruled that Cox's § 1983 suit should be dismissed because he had failed to exhaust his administrative remedies as the PLRA requires of prisoner litigants, Cox informed the district court that he was no longer incarcerated, and he argued that thus the PLRA's requirements should not apply to his suit. The district court then issued an order, instructing Cox to submit evidence showing that he had been released from prison if he wanted to continue his lawsuit. Cox submitted the requested affidavit, thereby meeting the requirements that the district court had imposed. Because the majority concludes that this does not satisfy Federal Rule of Civil Procedure 15's definition of a supplemental pleading, and then goes on in dicta to state that even if the district court were properly informed in a Rule 15 motion that a plaintiff was no longer a prisoner, the district court should dismiss the complaint and require the plaintiff to re-file, I respectfully dissent.

I believe that Cox has met Rule 15(d)'s requirements. Adopted to prevent the situation in which "plaintiffs have sometimes been needlessly remitted to the difficulties of commencing a new action even though events occurring after the commencement of the original action have made clear the right to relief," Fed. R. Civ. P. 15, Advisory Committee Notes (1963), Rule 15(d) permits a party to file a supplemental pleading identifying facts that have changed since an earlier filing. Fed. R. Civ. P. 15(d). This covers precisely the situation at issue here: Cox has identified to the court facts that have changed since his initial filing, and the court now proposes that he be needlessly remitted to commencing a new action. To be sure, it does not appear that Cox ever filed a pleading captioned, "Rule 15(d) Supplemental Pleading," but that is because he did not have to. He made the district court aware of the change in facts, the district court asked for

evidence of the change in facts, and Cox provided the district court precisely what the district court had requested. Record Entries #100, #107, #110. I am aware of no rule according to which a plaintiff who has complied with a Federal Rule of Civil Procedure has "waived" the application of that rule to his or her case by failing to cite it by number — when the district court has specifically asked for the required information in a different form.

Having decided that Cox did not file a supplemental pleading under Rule 15, the majority then goes on to hypothesize about what the consequences might have been for Cox if he had filed such a motion. The majority's suggestion that a district court must dismiss a case in which the plaintiff has filed a proper Rule 15(d) motion to inform the court that he is no longer subject to the PLRA's exhaustion requirement is both dicta, as the majority has concluded that this case involves no such plaintiff, and inconsistent with the traditional interpretations of Rule 15(d). As already mentioned, Rule 15(d) exists so that litigants may avoid wasting the judicial resources involved in dismissing and refiling a complaint, and instead may simply present a supplemental pleading that more accurately asserts the plaintiff's claims in light of any new factual developments. In other words, a Rule 15(d) pleading has the procedural effect of updating or superseding the prior pleading. Thus a Rule 15(d) supplemental pleading can cure all sorts of defects in the pleadings.

The majority suggests that the rule of procedure cannot "overrule" a federal statute; true though this may be, it does not resolve the question the majority seeks to answer. A Rule 15(d) supplemental pleading does not overrule substantive requirements, but rather creates an efficient mechanism by which a court may apply substantive requirements to facts that have changed. This is true whether the party invoking Rule 15(d) seeks to use it to overcome a requirement of the Constitution, a federal statute, or another rule of civil procedure. *See* 6A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice & Procedure § 1505, at 192-

93 (2d ed. 1990) ("Rule 15(d) now expressly approves curative supplemental pleadings and the rule is neither unconstitutional nor beyond the bounds of Congress' rulemaking authority under the Rules Enabling Act.") (citing cases). Thus although the Constitution forbids federal courts from entertaining suits over which they lack jurisdiction, Rule 15(d) enables plaintiffs to cure any jurisdictional defects, *see* 28 U.S.C. § 1653. Similarly, 28 U.S.C. § 1332 permits federal courts to hear cases lacking in a federal question when the parties are diverse *at the time of filing*, *Smith v. Sperling*, 354 U.S. 91, 93 n.1 (1957), but if a plaintiff files a Rule 15(d) pleading to substitute a non-diverse party, diversity is destroyed and the case must be dismissed, *see Grady v. Irvine*, 254 F.2d 224, 228 (4th Cir. 1958). This result is inexplicable unless the Rule 15(d) pleading becomes the relevant pleading for purposes of determining diversity, the general rule regarding the initial time of filing notwithstanding. Finally, Rule 12(b)(6) requires dismissal of any complaint that fails to state a claim on which relief may be granted, but Rule 15(d) permits a party to supplement his or her complaint in order to state a claim and avoid dismissal, *see* Fed. R. Civ. P. 15(d), Advisory Committee Notes (1963) (indicating that Rule 15(d) was intended to overcome "the rigid and formalistic view that where the original complaint fails to state a claim upon which relief can be granted, leave to serve a supplemental complaint must be denied"). In none of these instances is Rule 15(d) considered to "overrule" the constitutional, statutory, or procedural requirement at issue. In all of them, it is simply recognized that facts and allegations may change, so that a plaintiff who formerly did not meet a requirement now does, and nothing is gained by forcing the court to dismiss the suit and the plaintiff to refile it.

As the majority argues in Parts II.A and II.B of its opinion, whether the PLRA's exhaustion requirement applies depends on whether the "plaintiff was a prisoner when he 'brought' his

suit."[1]   But just as in the constitutional, statutory, and procedural contexts described above, recognizing a supplemental pleading under Rule 15(d) in the PLRA context does not "overrule" any statutory requirements; rather, Rule 15(d) simply enables courts to look to a different set of pleadings in determining whether the PLRA's exhaustion requirement applies.  I see no reason that Rule 15(d) applies differently in the context of a prisoner's lawsuit — or, more accurately, a former prisoner's lawsuit — than in other lawsuits, and I respectfully dissent.

---

[1]The majority's thorough argument in Parts II.A and II.B, in which it concludes that the PLRA's applicability turns on whether the plaintiff was a prisoner on the date of filing, is accompanied by a caveat suggesting that the point is assumed but not decided.  That footnote suggests that a court could hold that the PLRA exhaustion requirement applies to plaintiffs who are not, in fact, in prison.  Notwithstanding the fact that prison grievance procedures are generally available only to prisoners, rendering exhaustion by non-prisoners (or former prisoners) at least in one sense impossible, the PLRA explicitly limits its application to persons who are "incarcerated or detained," 42 U.S.C. § 1997e(h), a category that does not include former inmates.  *See Greig v. Goord*, 169 F.3d 165, 167 (2d Cir. 1999) (reasoning that the justifications for the exhaustion requirement "simply do not apply to individuals who were formerly incarcerated"); *Doe v. Washington County*, 150 F.3d 920, 924 (8th Cir. 1998) ("Congress therefore fully intended to distinguish between those who are 'prisoners' when they decide whether to file a complaint and those who are not."); *Kerr v. Puckett*, 138 F.3d 321, 323 (7th Cir. 1998) (suggesting that Congress sought to impose limits on current inmates, not former inmates, and that "[t]he statutory language does not leave wriggle room").