NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0038n.06

No. 18-5598

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| JAMES RATLIFF, | ) | |
| | ) | **FILED** |
| Plaintiff-Appellant, | ) | Jan 24, 2019 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | |
| | ) | |
| MANDY GRAVES; DONNIE HALL, JR.; JOANN | ) | ON APPEAL FROM THE |
| DEBAUN; Individually and/or in their official | ) | UNITED STATES DISTRICT |
| capacities as Ballard County Deputy Jailer; | ) | COURT FOR THE WESTERN |
| BALLARD COUNTY, KENTUCKY, | ) | DISTRICT OF KENTUCKY |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |

Before: BOGGS, KETHLEDGE, and STRANCH, Circuit Judges.

KETHLEDGE, Circuit Judge. James Ratliff was tased by a jailer while he was an inmate at Ballard County Jail in Kentucky. Ratliff thereafter sued the County and several current and former employees of the jail under 42 U.S.C. § 1983. The district court entered summary judgment for the defendants, holding that Ratliff had failed to exhaust his administrative remedies. We affirm.

We present the facts in the light most favorable to Ratliff's claims. *See Risher v. Lappin*, 639 F.3d 236, 239-40 (6th Cir. 2011). In March 2015, Ratliff was detained at the Ballard County Jail while he awaited trial for several state charges. On May 29, a deputy jailer, JoAnn DeBaun, moved Ratliff from one part of the jail to another. During this move, Ratliff noticed that DeBaun had a taser. Ratliff said that he and his brother used to shock each other with a similar device;

DeBaun said that he would not be able to handle the shock of her taser. In response, Ratliff stuck out his arm and told her to "hit [him] with it." DeBaun obliged, and Ratliff fell to the floor from the shock.

The next day, Ratliff asked DeBaun for a form to file a grievance with the jail. DeBaun said that she would "see what [she] [could] do." The day passed, and DeBaun failed to bring Ratliff a form. That evening, while Ratliff was in the shower, another jailer, Adam Carpenter, shined a laser pointer at him, which Ratliff says "kind of spooked" him. The next day—now two days after the incident—Ratliff asked DeBaun twice more for a form. Again, she said that she would bring him one, but failed to do so.

Two or three days after the incident, another jailer, Cody Armstrong, noticed burns on Ratliff's arm during an unrelated medical examination. When Ratliff explained that DeBaun had tased him, Armstrong took photos of Ratliff's injuries. Ratliff concedes that he could have asked Armstrong for a grievance form but did not. Sometime later, Ratliff told a third jailer that DeBaun had tased him. Ratliff again concedes that he could have asked that jailer for a form but did not. Yet the third jailer promptly reported DeBaun's actions to his supervisor, Chief Deputy Mandy Graves. Graves in turn tried to get in touch with the head jailer, Donnie Hall, who was on vacation in Florida at the time. Upon Hall's return—five days after DeBaun had tased Ratliff—Hall fired DeBaun and contacted the Kentucky State Police. DeBaun was later convicted of several state offenses.

Ratliff thereafter filed this lawsuit, alleging that the jailers and Ballard County had violated his rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments, as well as under Kentucky law. The defendants moved for summary judgment, arguing that Ratliff had failed to exhaust his

administrative remedies under the Prison Litigation Reform Act.  The district court entered summary judgment for the defendants.  This appeal followed.

We review the district court's decision de novo.  *See Risher*, 639 F.3d at 239-40.  The Prison Litigation Reform Act requires "a prisoner confined in any jail" to exhaust "such administrative remedies as are available" before filing a lawsuit.  *See* 42 U.S.C. § 1997e(a).  This provision applies to "all inmate suits about prison life."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Ratliff was in jail when he filed his complaint, so he was required to follow the jail's grievance policy by filing a form within five days of being tased.  *See Cox v. Mayer*, 332 F.3d 422, 424 (6th Cir. 2003); R. 35-7, Pg. ID 294.  Ratliff never filed a form with the jail, and thus his suit can proceed only if his failure to exhaust the jail's process can be excused.  *See Jones v. Bock*, 549 U.S. 199, 211 (2007); *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016).  And because this case was resolved not at the motion to dismiss stage but on summary judgment, Ratliff is required to identify some evidence supporting his claims.

Ratliff argues that his failure to exhaust the jail's administrative process should be excused, because the grievance process was "not in fact available" to him.  *See Ross*, 136 S. Ct. at 1856. The Supreme Court has identified three circumstances in which an administrative process is rendered "unavailable": first, when prison "officers [are] unable or consistently unwilling to provide any relief"; second, when a process is "so opaque" that it is "incapable of use"; or third, when prison officers "thwart inmates from taking advantage of a grievance process."  *Id*. at 1859-60.

Ratliff first argues that the process was unavailable because the jailers were "unable or consistently unwilling" to help him file a grievance.  *See id*. at 1859.  But Ratliff admitted in his testimony that he asked only DeBaun for a grievance form—even though Ratliff acknowledged

that other jailers walked by his cell hourly and that "it would make sense" to ask someone other than his assailant (*i.e.*, DeBaun) for a form. Moreover, Ratliff did not ask Armstrong for a form even after Armstrong noticed Ratliff's burn and specifically asked about his injuries. And when Ratliff was asked during his deposition why he did not ask any jailer other than DeBaun, Ratliff said simply that he didn't know. Indeed, Ratliff further admitted that he had obtained grievance forms and filed other grievances before. Thus, according to Ratliff's own testimony, he did not hit a "dead end" in the administrative process; he simply failed to consider other options for obtaining relief. *See id.*

Ratliff next argues that Carpenter thwarted his efforts to file a grievance. *See id.* at 1860. Specifically, Ratliff says that Carpenter intimidated him on two occasions. *Id.* The first was when Carpenter shined a laser pointer on him in the shower. But Ratliff himself testified that he was only "kind of spooked" by Carpenter's actions and that Carpenter was "playing around" with the laser pointer. [R. 35-2, Pg. ID 255.] The second was when Carpenter told him to "think about what [he was] doing." But Ratliff never attributed his failure to file a grievance to Carpenter's behavior. Instead, when asked why he failed to file one, he merely said, "I don't know." Thus, though the question is somewhat close, Ratliff has not presented evidence that would allow a factfinder to find that Carpenter's actions would have deterred a "person of ordinary firmness" from filing a grievance. *See Himmelreich v. Fed. Bureau of Prisons*, 766 F.3d 576, 578 (6th Cir. 2014) (per curiam).

Ratliff further contends that Chief Deputy Graves thwarted his efforts to file a grievance when she refused to notarize paperwork for him. But Ratliff does not specify what this paperwork was or how it prevented him from filing a grievance. Thus, Ratliff has not presented "persuasive

evidence" that any jailer thwarted his use of the prison's grievance process. *See Ross*, 136 S. Ct. at 1860-62.

Ratliff also argues that the administrative process was "so opaque" that it was "practically speaking, incapable of use." *See id*. at 1859. Yet Ratliff himself testified that the grievance process was posted in each cell, and that he understood that the process required him to file a grievance in writing. And Ratliff had previously used the process to file a different grievance at the Ballad County Jail. Hence the administrative process was not "so opaque" that "no ordinary prisoner [could] make sense" of it. *Id.* at 1859.

Ratliff's last argument—that equitable estoppel should bar the defendants from asserting the exhaustion defense—fails because he raised this argument for the first time in a Rule 59 motion. *See Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 616 (6th Cir. 2010).

The district court's judgment is affirmed.