**Silvester GOMEZ, Plaintiff,**

v.

**W.D. WINSLOW, et al., Defendants.**

**No. C 99–2273 SI.**

United States District Court,
N.D. California.

Aug. 28, 2001.

Silvester Gomez, PBSP–II, Crescent City, CA, Malcolm A. Heinicke, Fred A. Rowley, Kirstin M. Ault, Munger, Tolles & Olson, San Francisco, CA, for Plaintiff.

Barbara N. Sutliffe, Song J. Hill, CA State Attorney General's Office, San Francisco, CA, for Defendants.

## ORDER DENYING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

ILLSTON, District Judge.

On August 17, 2000, this Court heard argument on defendants' motion for judgment on the pleadings. Having carefully considered the arguments of the parties and the papers submitted, the Court hereby DENIES defendants' motion for the reasons set out below.

### BACKGROUND

Silvester Gomez, until recently an inmate at Pelican Bay State Prison ("PBSP"), filed this civil rights action under 42 U.S.C. § 1983, claiming that defendants were deliberately indifferent to his need for medical care. In his complaint, Gomez alleges that on October 10, 1995, he had an appointment to see Dr. Gard, a physician at PBSP. Plaintiff complained of sinus problems and longstanding headaches. Dr. Gard ordered, among other things, a blood test. Although Gomez tested positive for both hepatitis "A" and "C" antibodies in that blood test, he claims that he was not immediately informed of the results. Gomez saw several medical care providers over the next couple of years for various problems, including pain in his lower abdomen, but was not told that he had hepatitis C until October 1997. On September 30, 1997, Dr. Sands ordered blood tests for plaintiff. On October 28, 1997, Dr. Kushner saw Gomez and discussed the test results with him. For the first time, Dr. Kushner explained to Gomez that he had hepatitis C. Dr. Kushner discussed the possibility that Gomez might need a liver biopsy to obtain further information about his condition.

A liver biopsy was performed on March 3, 1998. On May 21, 1998, after the biopsy results were reviewed, a PBSP physician told Gomez that he was eligible for interferon, a treatment for hepatitis C. Gomez did not, however, begin interferon treatments until December 9, 1998. At least part of the delay was due to an informational impasse. Gomez wanted to know about the side effects of interferon

(e.g., how it would affect his other medical conditions and medications), but was not receiving what he considered satisfactory information, so he would not sign the consent forms. Without a signed consent from Gomez, the staff would not begin interferon treatments. Once Gomez received what he considered satisfactory information addressing his concerns, he consented to the interferon treatments. The medical staff then provided the treatments.

Of particular relevance to this motion are the steps Gomez took to obtain relief under the administrative remedies provided by the California Department of Corrections. *See* Cal.Code Reg. tit. 15, § 3084.1. The State of California provides its inmates and parolees the right to appeal administratively "any departmental decision, action, condition, or policy which they can demonstrate as having an adverse effect upon their welfare." *See id.* at § 3084.1(a). Under the California grievance system, inmates may obtain prospective relief, but not monetary damages. *See Rumbles v. Hill,* 182 F.3d 1064, 1068 (9th Cir.1999). The system consists of several levels of appeal: (1) informal resolution, (2) formal written appeal on a CDC 602 inmate appeal form, (3) second level appeal to the institution head or designee, and (4) third level appeal to the Director of the California Department of Corrections. *See* Cal.Code Reg. Tit. 15, § 3084.5.

On July 2, 1998, Gomez filed an initial grievance based on his concern about the medical services being provided to him. *See* Compl., Ex. 1–A ("Inmate Appeal Form"). On the first line of that appeal form, Gomez wrote: "Inadequate medical attention to a serious medical need." The grievance proceeded to explain that he had been diagnosed with hepatitis C and that, while he had been told that he was eligible for alfa interferon treatment, he had yet to receive treatment and had sent "numerous requests to the medical staff to no avail." *Id.* Under the section of the form titled "action requested," Gomez wrote: "That I be given the necessary treatment for my serious medical need." *Id.* The informal review occurred on August 21, 1998. Gomez had concerns about how the hepatitis treatment he had been promised would affect his other medical conditions, which included a thyroid condition, a stomach infection, and liver damage. *See* Compl. at 14. He had raised these concerns with the physician who told him that he was eligible for interferon treatment and was told that a nurse would provide the answers he was seeking. *See id.* Gomez filed several requests to speak with medical personnel over the following weeks as it became clear that the desired information was not forthcoming. *See id.* at 15–16. It appears that Gomez explained his concerns about treatment to Nurse Alpaugh when she met with him as part of the informal review of his grievance procedure. *See* Inmate Appeal Form. Nurse Alpaugh agreed to find out the answers to his questions and concerns and return the next week. *See id.,* Compl. at 17.

When Nurse Alpaugh failed to provide Gomez with the requested information, he filed a formal level complaint in an effort to get answers to his questions. Specifically, he requested a medical review to help him "to reach an informed decision since my concerns and questions are being ignored." Inmate Appeal Form. At this point, the prison waived the first level of formal review in order to expedite the process. During the time prior to second level review, two things happened that allayed Gomez's concerns about the promised interferon treatments. First, a PBSP physician ordered x-rays of Gomez's stomach to determine whether his stomach was in need of treatment and, if so, whether interferon treatment would have to be delayed as a result. *See* Compl. at 21. Sec-

ond, Nurse Alpaugh told Gomez that she had learned that interferon treatment would not worsen his existing thyroid problems. *See id.* On November 5, 1998, Gomez was interviewed by a Medical Technical Assistant as part of the second level of administrative review. *See* Compl., Ex. 37–A ("Second Level Response"). During that interview, Gomez explained that most of his concerns had been addressed and that he was waiting for the results of the stomach x-rays before consenting to interferon treatment. *See id.* The Department of Corrections form describing the second level response said: "You are being referred to Dr. Thor and your clinic physician to consider starting interferon." *Id.* In addition, Gomez was scheduled for the next available appointment for x-rays.[1] Soon after this grievance was decided, Gomez received satisfactory x-ray results, signed the consent form, and began to receive treatment for hepatitis. Compl. at 21–23.

Gomez filed his first complaint in this case on May 18, 1999. On August 3, 1999, this Court dismissed the complaint with leave to amend. On September 13, 1999, Gomez filed an amended complaint. In the amended complaint, Gomez asserted an Eighth Amendment claim of deliberate indifference to his serious medical needs. He asserted as a basis for his claim the fact that, while he had tested positive for hepatitis A and C antibodies in 1995, medical personnel had failed to inform him of the results. In addition, he alleged that another year elapsed between the time that he learned of his diagnosis and the time treatment was first made available to him. Also included in the body of his complaint were allegations that medical staff failed to adequately respond to his questions about his medical conditions. Gomez named eight individual members of the medical staff in the amended complaint. On August 2, 2000, this Court issued an order granting in part and denying in part a motion for summary judgment by the defendants.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed but within such time as to not delay the trial, any party may move for judgment on the pleadings." Under Rule 12(b)(6), a party may move to dismiss a complaint, and the district court must dismiss it if it fails to state a claim upon which relief can be granted. A motion for judgment on the pleadings and a motion to dismiss are substantially identical. *See* William W. Schwarzer, A. Wallace Tashima & James M. Wagstaffe, Federal Civil Procedure Before Trial § 9:319 ( 1997). Under either provision, the question presented is not whether the plaintiff will prevail in the action, but whether the plaintiff is entitled

---

1. Under "Appeal Response" on the Department of Corrections form describing the outcome of the grievance, Dr. Winslow wrote: "Your appeal is partially granted." Second Level Response. The court is unable to determine why the remedy is termed "partial." The record indicates that Gomez's appeal was motivated by a desire to be provided with information about hepatitis and about how treatment would affect his other medical conditions. Dr. Winslow wrote: "During your interview, you indicated most of your concerns have been addressed and you were now waiting for x-rays to be taken, before you could begin your interferon treatments." *Id.* Furthermore, the remedy Gomez sought in his initial grievance was the initiation of treatment for hepatitis. Soon after the second level response was filed, Gomez began receiving treatment. The prison had by that point provided the information he was seeking and treatment was scheduled. Nothing on the grievance form indicates which, if any, aspect of Gomez's appeal was *not* granted. *Id.* Moreover, Gomez does not in the instant case allege that inadequate treatment occurred after interferon treatment was commenced.

to offer evidence in support of the claim. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). In answering this question, the Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles,* 828 F.2d 556, 561 (9th Cir.1987). Generally, a court may consider only allegations made in the complaint; extrinsic factual material may not be taken into account. *See Powe v. Chicago,* 664 F.2d 639, 642 (7th Cir.1981). However, materials properly attached to a complaint as exhibits may be considered. *See Amfac Mortg. Corp. v. Arizona Mall of Tempe, Inc.,* 583 F.2d 426, 429 & n. 2 (9th Cir. 1978); *Durning v. First Boston Corp.,* 815 F.2d 1265, 1267 (9th Cir.1987), *cert. denied,* 484 U.S. 944, 108 S.Ct. 330, 98 L.Ed.2d 358 (1987) ("[Attached] documents are part of the complaint and may be considered in determining whether the plaintiff can prove any set of facts in support of the claim.").[2]

If the complaint fails to articulate a legally sufficient claim, the complaint should be dismissed, or judgment granted on the pleadings, and the Court must then decide whether to grant leave to amend. Leave to amend need not be granted when amendment would be futile and the deficiencies of the complaint could not be cured by amendment. *See Reddy v. Litton Indus.,* 912 F.2d 291, 296 (9th Cir. 1990); *Noll v. Carlson,* 809 F.2d 1446, 1448 (9th Cir.1987).

This Court recognizes that defendants' motion for judgment on the pleadings comes later than might otherwise be expected. The amended complaint was filed approximately two years ago, this Court has already ruled on defendants' motion for summary judgment, and the parties are well into discovery. However, the Supreme Court recently handed down a decision that clarified the Prison Litigation Reform Act ("PLRA") exhaustion requirement. *See Booth v. Churner,* 532 U.S. 731, 121 S.Ct. 1819, 1823, 149 L.Ed.2d 958 (2001). It is appropriate to determine at this juncture whether plaintiff has properly exhausted internal grievance procedures under the PLRA based on the interpretation of the statute set out in *Booth.*

## DISCUSSION

As the basis for their motion for judgment on the pleadings, defendants contend that plaintiff failed to satisfy the administrative exhaustion requirement established by the Prison Litigation Reform Act. The Prison Litigation Reform Act of 1995, Pub.L. No. 104–134, 110 Stat. 1321 (1996) ("PLRA"), amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

### 1. Divisibility of the Inadequate Medical Care Claim

Defendants' exhaustion argument is based in large part upon their assertion that Gomez's amended complaint contains not one claim based on inadequate medical care, but three distinct claims: (1) failure to timely diagnose his hepatitis C; (2) failure to timely treat the illness; and (3)

**2.** Defendants object to plaintiff's submission of four exhibits with his opposition papers. Plaintiff submitted (1) a copy of the transcript of plaintiff's deposition taken on June 25, 2001, (2) a blood test result, (3) an inmate disciplinary appeals screening form, and (4) an incomplete inmate request for interview form. Because the Court does not find it necessary to refer to these materials in ruling on this motion, there is no need to discuss whether striking the exhibits is necessary.

failure to inform. They argue that Gomez did not fully exhaust each of these three discrete claims. With regard to the first discrete claim, they assert that Gomez never specifically mentioned in his administrative appeals that medical officials had failed to timely diagnose his illness and inform him of that diagnosis. While they acknowledge that he first raised the second discrete claim (failure to timely treat) at the beginning of his administrative appeal, they claim that he abandoned that claim after the first level of review because his request for formal review focused on a request for further information about the relationship between the treatment he had been seeking and his existing medical conditions. As to the third discrete claim, they argue that because Gomez did not take his request for information about the treatment he was seeking to the highest level of review, he failed to exhaust that claim as well.

The exhaustion requirement of the PLRA is intended to serve a number of purposes, including deterring frivolous lawsuits and creating an administrative record allowing courts to evaluate the relative merits of claims. *See Wyatt v. Leonard,* 193 F.3d 876, 878–79 (6th Cir.1999). The most relevant purpose of the exhaustion requirement as it relates to the instant case, however, is that exhaustion allows prison officials to receive notice of complaints so that they can take proper action. *Id.; see also Jackson v. District of Columbia,* 254 F.3d 262, 269 (D.C.Cir. 2001) (among purposes of PLRA is "relieving courts of the burden of lawsuits filed before prison officials have had an opportunity to resolve prisoner grievances on

their own"). Here, Gomez filed an administrative appeal that did just that—it provided prison officials with notice that he had been and was continuing to receive inadequate medical care for his hepatitis, as evidenced by the time between his diagnosis and the initiation of treatment and medical officials' failure to satisfactorily address his questions about the treatment he was seeking.

■ Rather than distinct causes of action, allegations that defendants failed to notify Gomez that he tested positive for hepatitis C antibodies, begin treatment for a matter of years, or provide him with adequate information are simply aspects of the inadequate medical treatment he notified corrections officials about in his administrative appeals. The allegations are encompassed within Gomez's claim of inadequate medical care and do not require filing separate internal grievances. Beginning at the first level of the administrative grievance procedure, Gomez made clear that his concern was with the inadequate medical treatment he had received for hepatitis. As stated earlier, the first line of his administrative appeal form read: "Inadequate medical attention to a serious medical need." Inmate Appeal Form.[3]

Defendants cite a recent case from the Northern District of Illinois under the Federal Tort Claims Act (FTCA), which also has an exhaustion requirement, for the proposition that each element of the inadequate medical treatment claim must be exhausted. *See Sheptin v. United States, et al.,* 2000 WL 1788512 (N.D.Ill. 2000). In that case, the court held that an inmate failed to exhaust several claims,

**3.** Defendants' argument would be better raised in a case in which an inmate filed suit alleging a number of unrelated claims. For example, in a case in which an inmate filed suit based upon inadequate medical treatment and failure to protect him from another inmate, it would be clear that the facts involved are distinct, and thus require separate exhaustion in the administrative process. *See, e.g., Curry v. Scott,* 249 F.3d 493, 505 (6th Cir.2001) (claim was not exhausted because it was "a separate claim, against a separate individual, premised on a separate and independent legal theory").

despite the fact that he had filed an administrative claim. However, Sheptin's administrative claim related to non-disclosure of a hepatitis diagnosis, failure to treat that hepatitis, improper treatment of his heart condition, and the claim that he had been given inappropriate prescription drugs. Sheptin's complaint in federal court alleged, among other things, failure to treat for a seizure disorder, harassment by prison employees, filing of a false incident report by prison officials, failure to comply with a subpoena, and failure to give him dentures. *See id.* at *2. The court concluded that prison officials could not be expected to uncover the allegations contained in the complaint in an investigation of the inmate's administrative claim. *Id.*

In contrast to the facts in *Sheptin,* all of the elements of Gomez's claim relate to his dissatisfaction with the treatment he received for his hepatitis. As the *Sheptin* court explained: "A claimant is not required to provide the agency with a preview of his lawsuit by reciting every possible theory of recovery or every factual detail that might be relevant. A claim can put an agency on notice of facts it should discover during its investigation of the claim." *Id.* at *3.

## 2. Scope of the PLRA Exhaustion Requirement

Defendants contend that plaintiff did not take his claims of inadequate medical care to the highest level of administrative review possible. Specifically, they argue that plaintiff abandoned his claim based on defendants' failure to treat his condition because that aspect of his claim was not mentioned in his second level of review. Additionally, they claim that Gomez failed to exhaust his claim based on defendants' failure to provide him with information about the side effects of the treatment he was seeking because he did not take his appeal to a third level of review.

■ The Supreme Court recently clarified the scope of the PLRA exhaustion requirement. *See Booth v. Churner,* 532 U.S. 731, 121 S.Ct. 1819, 1823–24, 149 L.Ed.2d 958 (2001). In *Booth,* the Supreme Court held that the PLRA requires administrative exhaustion even where the grievance process does not permit an award of the specific relief the aggrieved inmate is seeking. *Id.,* 532 U.S. 731, 121 S.Ct. at 1823–24, 149 L.Ed.2d 958 (2001). The inmate in *Booth* argued that it was unreasonable to require that he exhaust the administrative process when he was seeking money damages—a form of relief that was unavailable in Pennsylvania. The court explained that the phrase "such administrative remedies as are available" requires a prisoner to exhaust whatever grievance procedures are available, "whether or not the possible responses cover the specific relief the prisoner demands." *Id.,* 121 S.Ct. at 1823.

■ While the *Booth* court made clear that administrative remedies must be exhausted despite the fact that the remedy available to the inmate is not the one being sought, it did not go so far as to say that administrative appeals must be pursued when the grievance procedure can provide no remedy at all. The *Booth* court's analysis hinged upon the fact that the Pennsylvania administrative process had authority to take *some* action, despite the fact that it was not able to grant the form of relief the inmate was seeking. The court recognized, though, that exhaustion would *not* be required in a situation in which no relief whatsoever would be available to an inmate through the administrative process. "Without the possibility of some relief, the administrative officers would presumably have no authority to act on the subject of the complaint, leaving the inmate with nothing to exhaust." *Id.,* 121 S.Ct. at 1823, n. 4. Furthermore, the court recognized that "the modifier 'available' requires

the possibility of some relief for the action complained of ...." *Id.*, 121 S.Ct. at 1824.

Other courts have recognized that inmates need not exhaust administrative remedies when doing so would be entirely futile. The Seventh Circuit, in an opinion written prior to *Booth,* recognized that, under some circumstances, exhaustion should not be required when no remedy at all is available. In dicta, the court wrote:

> It is possible to imagine cases in which the harm is done and no further administrative action could supply any 'remedy.' ... Suppose the prisoner breaks his leg and claims delay in setting the bone is cruel and unusual punishment. If the injury has healed by the time suit begins, nothing other than damages could be a 'remedy,' and if the administrative process cannot provide compensation then there is no administrative remedy to exhaust.

*Perez v. Wisconsin Dept. Of Corrections,* 182 F.3d 532, 538 (7th Cir.1999). In a more recent case, decided after *Booth,* an inmate filed suit against a correctional officer for failing to protect him from an inmate who had been threatening him. *See Nitz v. Correctional Officer French,* 2001 WL 747445 (N.D.Ill.2001). The inmate had filed a grievance seeking relief from the threatening situation and was subsequently transferred to another institution. *See id.* at *3. The defendant sought dismissal because the inmate had not appealed the grievance to the highest possible level within the administrative process. The court, in rejecting that argument, explained that once the inmate had been transferred from the institution, he had received all the relief that administrative procedures could provide. "It would be a strange rule that an inmate who has

received all he expects or reasonably can expect must nevertheless continue to appeal, even when there is nothing to appeal." *Id.*

In the instant case, plaintiff filed his administrative appeal after learning of his hepatitis diagnosis because he was concerned about the treatment, or lack thereof, he was receiving for the illness. Throughout the administrative appeal process, his goal was to receive effective treatment for his illness. During the period between the informal review level and the formal review level, Gomez was offered treatment for the hepatitis, something he had been seeking for some time. He filed a formal level appeal, though, because he was dissatisfied with the responses he had received from medical staff about his concerns about potential side effects. While the formal level review was pending, and after numerous requests by Gomez, PBSP medical staff assured him that he need not worry about side effects caused by interferon treatment. In fact, Gomez apparently told prison officials that his concerns had been addressed. In the Second Level Response Record, Dr. Winslow wrote: "During your interview, you indicated most of your concerns have been addressed and you were now waiting for x-rays to be taken, before you could begin your interferon treatments." Second Level Response. The appeal was granted, and treatment began soon thereafter. Because Gomez's questions related to his concern about possible side effects of interferon treatment and he had been unwilling to sign consent forms for the treatment until those questions were answered, the fact that interferon treatment was commenced is another indication that his concerns had been addressed.[4]

---

4. Defendants argue that Gomez acknowledged failing to adequately exhaust administrative remedies in his amended complaint. The opening pages of Gomez's amended complaint are written on a pre-printed template with blanks in which he was provided room to fill in answers to a list of questions. One of the questions, under a section titled "Exhaus-

It is unclear what relief defendants believe would have been available to Gomez had he continued to a higher level of appeal. His administrative appeal had been granted, and because he was finally being treated and his questions had been answered, there was no reason for him to press his appeal to a higher level. Were it possible to obtain money damages through the administrative appeal process, there would likely be an argument that there was an available remedy that required exhaustion, but there is no evidence that any further remedy was available. Because Gomez had, in essence, "won" his inmate appeal, it would be unreasonable to expect him to appeal that victory before he is allowed to file suit. Indeed, it appears that plaintiff would have been rebuffed by prison officials had he for some reason tried to pursue his grievance to another level. At oral argument on this motion, counsel for plaintiff noted that one of the grounds for rejecting or canceling an appeal is that the issue had been resolved at a previous level.

This Court finds that plaintiff adequately exhausted his claim of inadequate medical treatment under the PLRA exhaustion requirement as explained in *Booth*.

## CONCLUSION

For the foregoing reasons, the Court DENIES defendants' motion for judgment on the pleadings.

tion of Administrative Remedies," was: "Is the last level to which you appealed the highest level of appeal available to you?" Gomez checked the box indicating "No." Gomez filed the amended complaint without the assistance of an attorney, who might have advised him to provide some further explanation of his response to that question. As we have seen, Gomez's answer was accurate—he had not, in fact, appealed the question to the highest level of administrative review available. There was no need to do so because his concerns were addressed by prison officials after the second level of review. This check mark was not an admission by Gomez that he had failed to adequately exhaust administrative remedies under the PLRA.

**IT IS SO ORDERED.**