William **HAZLETON**, Plaintiff,

v.

Edward S. **ALAMEIDA,**
et al., **Defendants.**

No. **CV036826LGB (AJW).**

United States District Court,
C.D. California,
Western Division.

March 2, 2005.

William Hazleton, Lancaster, CA, Plaintiff, in pro per.

G. Michael German, Deputy Attorney General, Office of the California Attorney General, San Diego, CA, for Defendants.

## ORDER ADOPTING REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

BAIRD, District Judge.

Pursuant to 28 U.S.C. § 636(b)(1)(C), the Court has reviewed the entire record in this action, and the attached Amended Report and Recommendation of Magistrate Judge ("Report"). No objections to the Report have been filed within the time allowed. Good cause appearing, the Court concurs with and adopts the findings of fact, conclusions of law, and recommendations contained in the Report.

**IT IS SO ORDERED.**

## REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

WISTRICH, United States Magistrate Judge.

Plaintiff, a state prisoner proceeding *pro se* and *in forma pauperis,* filed a verified complaint pursuant to 42 U.S.C. § 1983 against several California state prison officials and prison staff employed at California State Prison–Los Angeles County ("CSP–LAC"). Plaintiff alleges that defendants exhibited deliberate indifference to his serious medical needs, in violation of his Eighth Amendment rights, by exposing him unnecessarily to the hepatitis C virus and by failing properly to treat his resulting disease and complications he suffered. The complaint seeks monetary, injunctive, and declaratory relief.

Defendants Alameida, Yarborough, Brown, Fitter, Pattanachinda, and Attygalla filed a motion to dismiss the complaint on the ground that plaintiff failed to exhaust his administrative remedies with respect to the claims alleged in his complaint, as required by 42 U.S.C. § 1997e(a). Plaintiff filed an opposition to the motion, and defendants filed a reply.

## Discussion

### Legal standard applicable to a motion to dismiss for failure to exhaust prison administrative remedies

The Prison Litigation Reform Act of 1995 ("the PLRA"), Pub.L. No. 104–134, 110 Stat. 1321 (1996), amended 42 U.S.C. § 1997e(a) to provide that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Construing section 1997e(a), the Supreme Court has held that Congress mandated exhaustion of prison administrative remedies if those procedures can provide some relief on the complaint stated, even if not money. *Booth v. Churner*, 532 U.S. 731, 732, 741 n. 6, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001).

Absent a "prisoner's concession to nonexhaustion," the administrative exhaustion requirement imposed by section 1997e(a) is an affirmative defense that must be raised and proven by defendants. *Wyatt v. Terhune*, 315 F.3d 1108, 1118–20 (9th Cir.), *cert. denied*, 540 U.S. 810, 124 S.Ct. 50, 157 L.Ed.2d 23 (2003). Defendants properly characterize their motion to dismiss plaintiff's complaint for failure to exhaust administrative remedies as an "unenumerated" Rule 12(b) motion. *See Wyatt*, 315 F.3d at 1119–20 (holding that the failure to exhaust prison administrative remedies is subject to an unenumerated Rule 12(b) motion rather than a motion for summary judgment). The proper remedy for failure to exhaust nonjudicial remedies is dismissal of the claim without prejudice. *Wyatt*, 315 F.3d at 1120.

In support of their motion, defendants have submitted declarations under penalty of perjury, and they also rely on plaintiff's verified complaint and the attached exhibits. In ruling on an unenumerated Rule 12(b) motion to dismiss for a failure to exhaust administrative remedies, "the court may look beyond the pleadings and decide disputed issues of fact" by, for example, considering affidavits submitted by the parties. *See Wyatt*, 315 F.3d at 1119–20 (concluding that the affidavits submitted by the defendants failed to establish that the plaintiff failed to exhaust his prison administrative remedies). Moreover, a court may consider exhibits to the complaint without converting a motion to dismiss into a motion for summary judgment. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir.2001). Even documents that are not physically attached to the complaint may be considered if their authenticity is not contested and the complaint "necessarily relies" on them. *Lee*, 250 F.3d at 688 (quoting *Parrino v. FHP, Inc.*, 146 F.3d 699, 705–706 (9th Cir.1998)); *see In re Stac Electronics Securities Litigation*, 89 F.3d 1399, 1405 n. 4 (9th Cir.1996)(reviewing full text of document that was mentioned in the complaint, including portions of the document that were not addressed in the complaint). This rule also extends to "documents crucial to the plaintiff's claims, but not explicitly incorporated in his complaint" in order to "prevent[ ] plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based," *Parrino*, 146 F.3d at 706 (court properly considered insurance plan in ruling on a motion to dismiss because the plaintiff's claim rested on membership in the plan). A court ruling on a motion to dismiss also may take judicial notice of "matters of public record." *Lee*, 250 F.3d at 688 (citing Fed.R.Evid. 201 and quoting *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir.1986)(taking judicial notice of state administrative records)).

**California's inmate appeals process**

■ California state inmates and parolees have

> the right to appeal administratively "any departmental decision, action, condition, or policy which they can demonstrate as having an adverse effect upon their welfare." Under the California grievance system, inmates may obtain prospective relief, but not monetary damages. The system consists of several levels of appeal: (1) informal resolution, (2) formal written appeal on a CDC 602 inmate appeal form, (3) second level appeal to the institution head or designee, and (4) third level appeal to the Director of the California Department of Corrections.

*Gomez v. Winslow*, 177 F.Supp.2d 977, 979 (N.D.Cal.2001) (internal citations omitted); *see generally* Cal.Code Regs. tit. 15, §§ 3084 *et seq.* (regulations regarding the administrative appeal procedure for California state prisoners). In general, an inmate must submit an appeal "within 15 working days of the event or decision being appealed, or of receiving an unacceptable lower level appeal decision." Cal.Code Regs. tit. 15, § 3084.6(c). An inmate exhausts his prison administrative remedies within the meaning of section 1997e(a) by pursuing an administrative appeal through all of the levels of review. *See* Cal.Code Regs. tit. 15, §§ 3084.1(a), 3084.5(a)(1),(b),(c) & (d); *Bennett v. King*, 293 F.3d 1096, 1098 (9th Cir.2002); *Barry v. Ratelle*, 985 F.Supp. 1235, 1237–38 (S.D.Cal.1997).

**Plaintiff's allegations and evidence regarding exhaustion**

The complaint and attached exhibits show that on August 9, 2002, plaintiff "submitted a 602 appeal grievance form stating all issues concerning his health and safety concerns," bearing appeal log number LAC A–02–01845. [Complaint ¶ 41]. The appeal was denied at the informal level of review, prompting plaintiff to seek first-

level formal review and to request the following relief: (1) monetary compensation for pain and suffering in the amount of $250,000; (2) transfer to a medical facility at Vacaville for specialized medical care; (3) immediate transfer for admittance to Lancaster Community Hospital for previously ordered cardiac care; and (4) complete cancer work-up on lower abdomen and pain care. [Complaint Ex. D].

The complaint alleges that plaintiff's "appeal was partially granted" at the first level of formal review in that plaintiff was interviewed by defendant Pattanchinda, a staff physician, and plaintiff received a written appeal response signed by Pattachinda and another staff physician, defendant Trinidad, stating that plaintiff had been placed "on the waiting list to see the GI specialist" at High Desert Hospital for his stomach pain. [Complaint Ex. D; *see also* Complaint ¶¶ 18, 41–42]. Pattanchinda and Trinidad concluded that plaintiff had received a pacemaker due to "sick sinus syndrome." [Complaint Ex. D]. They rejected plaintiff's allegations regarding heart failure or coronary heart disease, denied his requests for a transfer to Lancaster Community Hospital or to the Vacaville medical facility, and advised him that monetary compensation "is not within the scope of the appeals process." [Complaint ¶¶ 42–43 & Ex. D].

The complaint alleges that plaintiff "submitted the appeal for Second Level Review on November 24, 2002." [Complaint ¶ 43]. Exhibits attached to the complaint show that plaintiff signed a typed request for second-level formal review dated November 12, 2002, and that he also signed a handwritten request for second-level formal review dated November 26, 2002 (with a crossed-out date of November 12, 2002) on his 602 appeal form. [Complaint Ex. D]. In the November 12, 2002 typed request, plaintiff described in detail the rea-

sons for his dissatisfaction with the response to his appeal at the first level of formal review. [Complaint Ex. D]. Plaintiff insisted that "[t]his appeal must continue until relief can be found in a court of law," and he reiterated his requests for (1) a transfer to the Vacaville medical facility for specialized treatment; (2) "begin cancer work-up for lower and upper abdomen"; and (3) monetary compensation for pain and suffering. [Complaint Ex. D]. In the November 26, 2002 handwritten request on his 602 appeal form, plaintiff wrote that he was dissatisfied with the first-level formal response because he had not been seen by a gastroenterologist and thus "partial grant hasn't occurred. Still request transfer to Vaca." [Complaint Ex. D].

Plaintiff's 602 appeal form does not indicate the disposition of his request for second-level formal review. Other exhibits attached to the complaint indicate that plaintiff's request for second-level formal review was rejected three times for defects in form, a fact that plaintiff confirms in his opposition to defendants' motion. [See Complaint Ex. D; Plaintiff's Opposition 11–12]. The exhibits in question are three "Inmate/Parolee Appeals Screening" forms signed by E. O'Dell ("O'Dell"), Inmate Appeals Coordinator for CSP–LAC. The forms advise plaintiff that his appeal is being returned to him. The first, dated October 29, 2002, states that plaintiff failed to complete Section F of his 602 form, which is the portion of the inmate appeal form designated for requesting second-level review. That form also cautions plaintiff "Your time is running out! (TIME LAPSE)." [Complaint Ex. D].

The second screening form, dated November 18, 2002, advises plaintiff that he has not adequately completed his 602 form. It includes the following comment by O'Dell:

I sent you a s/o (10/29/02) w/specific instruction. Review Section B of your requested action; you requested two: (1) transfer & (2) monetary compensation All denied. Section "F" should reflect that request not an explanation/rebuttal of 1st level review. . . . You have one week (5 working days) to resolve this matter or your time lapse will take effect.

[Complaint Ex. D].

The third screening form, dated December 17, 2002, advises plaintiff that he has not adequately completed his 602 form and instructs him that "you need to either correct/delete comment on Section 'F'—'Response on back page' as those responses added new issues. You also need to sign if you delete such comment above . . . ." [Complaint Ex. D]. There are no other exhibits documenting the submission or disposition of plaintiff's request for second-level review.

The complaint does not contain any allegations or exhibits indicating that plaintiff requested or received review at the third, or Director's, level of review. Plaintiff's complaint alleges, however, that "[o]n February 28, 2003, the California Board of Control rejected plaintiff's claim for compensation as complex and requiring formal civil determination, dated March 14, 2003." [Complaint ¶¶ 43–44]. The complaint's exhibits include three letters from the State of California Victim Compensation and Government Claims Board. The latest of these is dated March 14, 2003, and advises plaintiff that his claim has been rejected. [Complaint Ex. E]. The complaint alleges that "[d]ue to the futility [plaintiff] has encountered with the administrative appeals process, he continues litigation under 42 U.S.C. § 1983." [Complaint ¶ 45].

**Defendants' allegations and evidence regarding exhaustion**

In support of their motion, defendants have submitted declarations under penalty

of perjury executed by Curt Carson ("Carson"), the Appeals Coordinator at CSP–LAC, and N. Grannis ("Grannis"), Chief of the Inmate Appeals Branch for the California Department of Corrections ("CDC"). In his declaration, Carson states that the CSP–LAC Appeals Coordinator "receives all formal inmates appeals submitted at the institutional level arising out of matters alleged to have occurred at CSP–LAC," and that he is "familiar with the CDC's inmate appeals process and the processing of inmate appeals at CSP, which is done pursuant to the provisions of tit. 15, Cal.Code of Regs, § 3084.6 ...." [Carson declaration ¶ 1]. Carson declares that a "thorough search of our records, which are kept in the ordinary course of business at or near the time this office receives an inmate appeal pursuant to our regular business practices, revealed inmate Hazleton submitted to this office only the following appeals from 2001 to the present[.]" [Carson Decl. ¶ 4]. On September 3, 2002, plaintiff submitted an appeal "regarding various medical issues" which was given log number LAC–A–02–01845, the same log number referenced in plaintiff's complaint and attached exhibits. [Carson Decl. ¶ 4(a); Complaint ¶ 41]. Carson states that "[t]he appeal was granted in part at the first level of review on October 4, 2002. This office has no records which indicate [plaintiff] sought further review of this issue. A copy of the Inmate/Parolee Appeals Tracking System is attached hereto as Exhibit B." [Carson Decl. ¶ 4(a) ]. In the section captioned "Appeal History," the Inmate/Parolee Appeals Tracking System shows that plaintiff's appeal, log number LAC–A–02–01845, raising the issue "medical" was granted in part at the first level of review. It shows no appeal received at the second level of review. [Carson Decl. Ex. B].

Carson further attests that

[o]n December 5, 2003, the office of the Appeals Coordinator received an appeal from plaintiff regarding living conditions. The appeal was screened out on December 12, 2003, because he was appealing an action not yet taken. This office has no records which indicate [plaintiff] sought further review of this issue.... Other than the appeals described above, this office has no records of any other appeals from [plaintiff] while at CSP–LAC.

[Carson Decl. ¶ 4(b) & Ex. B ].

Grannis states that he or she is employed by the CDC as Chief of the Inmate Appeals Branch in Sacramento, California, which receives all inmate appeals submitted to the Director's Level. I am familiar with CDC's inmate appeals process and the processing of inmate appeals at the Director's Level. [Grannis Dec. ¶ 1]. Grannis attests that "a thorough search by my staff of our records, which are kept in the ordinary course of business at or near the time this Office receives an inmate appeal, revealed that this Office has not received any appeals from [plaintiff]. No appeals by [plaintiff] have been screened out *or* accepted for review at the Director's Level." [Grannis Decl. ¶ 3].

Defendants' declarations are competent evidence and controvert plaintiff's verified complaint alleging that he successfully submitted a request for second-level review of his appeal regarding his medical care for hepatitis C. Even if plaintiff's allegations are accepted as true, however, defendants' evidence, taken together with plaintiff's complaint and attached exhibits, establish that plaintiff did *not* file any request for review at the third, or Director's, level of review. Plaintiff's failure to do so means that he did not exhaust his administrative remedies with respect to his Eighth Amendment claims alleging deliberate indifference to his serious medical needs.

In his opposition to defendants' motion, plaintiff does not contend that he sought

Director's level review of his medical care claims or that he could present additional evidence bearing on that issue. Rather, plaintiff argues that there are other reasons why defendants' motion should be denied. Unfortunately for plaintiff, those arguments are unavailing.

Plaintiff argues that defendants' motion represents "a deliberate attempt to shift the focus of the issues of the complaint to procedural matters only to effect dismissal," and is intended "to minimize the extent of the defendant's deliberate indifference . . . ." [Plaintiff's Opposition 2]. Defendants' motives, however, are irrelevant to their ability to invoke section 1997e(a)'s exhaustion requirement. Furthermore, while the exhaustion requirement is procedural, it was enacted to foster substantive policy goals, such as giving prison officials the opportunity to redress grievances without litigation and deterring frivolous or unnecessary lawsuits. *See Porter v. Nussle*, 534 U.S. 516, 524–525, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002) (discussing Congressional intent in enacting section 1997e(a)).

Plaintiff also contends that he has met his burden to plead facts showing deliberate indifference to his serious medical needs, and that those allegations must be accepted as true. [Plaintiff's Opposition 5–6]. Failure to exhaust administrative remedies, however, is an affirmative defense, meaning that if the defense is adequately pleaded and proven, "it will defeat the plaintiff's . . . claim, even if all the allegations in the complaint are true." *Black's Law Dictionary* defense (8th ed.2004).

Plaintiff further asserts that the declarations submitted by defendants are improper because they are outside the pleadings and should not be accepted as true [Plaintiff's Opposition 6–7], but *Wyatt* authorizes the court to look beyond the pleadings to determine disputed issues of fact material to the question of exhaustion. *See Wyatt*, 315 F.3d at 1119–20. Defendants' declarations have not been given dispositive weight, but instead have been properly considered along with plaintiff's verified allegations and the exhibits to the complaint. *See Wyatt*, 315 F.3d at 1119 (stating that "it is considerably easier for a prison administrator to show a failure to exhaust than it is for a prisoner to demonstrate exhaustion") (quoting *Ray v. Kertes*, 285 F.3d 287, 295 (3rd Cir.2002)).

Citing *Gomez*, plaintiff argues that his Eighth Amendment claims should be allowed to proceed notwithstanding any failure to exhaust through the third level of administrative review. Plaintiff contends that under *Gomez*, "a general grievance complaining about inadequate medical care satisfies the exhaustion requirement if the grievance puts prison officials on notice of the complaints," "there is no need to take an appeal to [the] 3rd level if a lower-level is granted," and that plaintiff "has put officials on notice and his appeal was in fact partially granted." [Plaintiff's Opposition 10].

In *Gomez*, an inmate filed an administrative appeal alleging "[i]nadequate medical attention to a serious medical need" on the grounds that "he had been diagnosed with hepatitis C and that, while he had been told that he was eligible for alfa interferon treatment, he had yet to receive treatment and had sent 'numerous requests to the medical staff to no avail.'" *Gomez*, 177 F.Supp.2d at 979. Under "action requested," the inmate wrote: "That I be given the necessary treatment for my serious medical need." *Gomez*, 177 F.Supp.2d at 979. After the informal level of review, the inmate included on his appeal form a request for information as to how interferon would affect his medical conditions and medications, so that he

could make an informed decision about whether to proceed with interferon treatment. *Gomez,* 177 F.Supp.2d at 978–979. Before a second-level response to the inmate's grievance was issued, certain steps were taken to address his concerns about the side effects of interferon treatment. During an interview conducted in connection with the second level of review, the inmate indicated that most of his concerns about side effects had been addressed, and that he was waiting for stomach x-rays before consenting to interferon treatment. *Gomez,* 177 F.Supp.2d at 979–980. Prison officials issued a second-level response stating that plaintiff was being referred to physicians "to consider starting interferon" and was scheduled for stomach x-rays; soon after, the inmate "received satisfactory x-ray results, signed the consent form, and began to receive [interferon] treatment for hepatitis." *Gomez,* 177 F.Supp.2d at 980.

The defendant prison officials contended that the inmate's section 1983 complaint contained "not one claim based on inadequate medical care, but three distinct claims: (1) failure to timely diagnose his hepatitis C; (2) failure to timely treat the illness; and (3) failure to inform." *Gomez,* 177 F.Supp.2d at 981–982. The defendants claimed that the inmate "never specifically mentioned in his administrative appeals that medical officials had failed to timely diagnose his illness and inform him of that diagnosis," abandoned the second claim (failure to timely treat) after the informal level of review "because his request for formal review focused on a request for further information about the relationship between the treatment he had been seeking and his existing medical conditions," and "did not take his request for information about the treatment he was seeking to the highest level of review," thereby failing to exhaust that claim as well. *Gomez,* 177 F.Supp.2d at 982.

The district court rejected the argument that the inmate was required to exhaust each discrete aspect of his medical care claim. Noting that "[t]he most relevant purpose of the exhaustion requirement as it relates to the instant case ... is that exhaustion allows prison officials to receive notice of complaints so that they can take proper action," the district court held that what the defendants characterized as discrete claims were "simply aspects of the inadequate medical treatment [the inmate] notified corrections officials about in his administrative appeals," which were sufficient to put prison officials on notice "that [the inmate] had been and was continuing to receive inadequate medical care for his hepatitis ...." *Gomez,* 177 F.Supp.2d at 982. Consequently, the inmate was not required to file and exhaust separate grievances with respect to those allegations.

Here, as in *Gomez,* plaintiff's administrative appeals put defendants on notice that plaintiff was dissatisfied with his medical treatment for hepatitis C and its complications. This case is not on all fours with *Gomez,* however. In *Gomez,* the inmate's appeal was granted at the second level of formal review, and he received all of the relief he had requested during the pendency of his administrative appeal—information enabling him to render an informed consent and interferon treatment for his hepatitis C. Thus, it was

unclear what relief defendants believe would have been available to [the inmate] had he continued to a higher level of appeal. His administrative appeal had been granted, and because he was finally being treated and his questions had been answered, there was no reason for him to press his appeal to a higher level.... [T]here is no evidence that any further remedy was available. Because [the inmate] had, in essence, "won" his inmate appeal, it would be unreasonable

to expect him to appeal that victory before he is allowed to file suit. *Gomez,* 177 F.Supp.2d at 985.

In this case, by contrast, plaintiff's appeal was only partially granted at the first level of formal review, when plaintiff was put on the waiting list for an appointment to see a GI specialist, and even that appointment had not occurred at the time plaintiff signed his requests for second-level review, in which he asked, among other things, to be placed on a "shorter list." [Complaint Ex. D]. In his written requests for second-level review (which, according to defendants, was never properly submitted), plaintiff alleged that the first-level response to his appeal was inadequate and misguided, repeated his demands for additional relief, and said he would press his appeal until he obtained relief in court, if necessary. [Complaint Ex. D].

Unlike the inmate in *Gomez,* plaintiff did not obtain all of the relief he sought at the intermediate stages of administrative review, and it is possible that he might have obtained additional relief if he had pursued his appeal through the Director's level of formal review, even if he was precluded from obtaining any monetary compensation. *See Booth,* 532 U.S. at 732, 741, 121 S.Ct. 1819 (holding that under section 1997e(a), exhaustion is mandated regardless of the type of relief offered through administrative procedures, as long as some relief is potentially available). Therefore, enforcing the exhaustion requirement in this case is consistent with its objective of "relieving courts of the burden of lawsuits filed before prison officials have had an opportunity to resolve prisoner grievances on their own." *Gomez,* 177 F.Supp.2d at 982 (quoting *Jackson v. District of Columbia,* 254 F.3d 262, 269 (D.C.Cir.2001)).

Despite the possibility he could have obtained further relief, plaintiff asserts that it would have been futile for him to exhaust his administrative remedies because the administrative appeals process is "flawed by administrative deception, evasion, invalid rejections, double standards of time requirements, and side-stepping obvious claims of constitutional violations as suffered by plaintiff ...." [Plaintiff's Opposition 8]. Plaintiff contends that his that his second-level appeal was rejected three times for "minor violations of form structure," and that those rejections were intended to, and did, "subvert the appeal process" by foreclosing him from appealing in a timely manner. [Plaintiff's Opposition 8, 11–12]. Plaintiff also maintains "appeals based on requests for specific medical care for specific medical issues are automatically denied by the appeal coordinator handling medical issues" on the ground that "such decisions rest solely within the discretion of" the attending physician. [Plaintiff's Opposition 11–12].

In *Booth,* the Supreme Court noted when Congress enacted the PLRA and amended section 1997e(a), it imposed an "obviously broader exhaustion requirement" than under pre-PLRA law, resulting in "elimination of the requirement that administrative procedures must satisfy certain 'minimum acceptable standards' of fairness and effectiveness before inmates can be required to exhaust them, and the elimination of courts' discretion to excuse exhaustion when it would not be 'appropriate and in the interests of justice.'" *Booth,* 532 U.S. at 740 n. 5, 121 S.Ct. 1819; *see also Porter,* 534 U.S. at 524, 122 S.Ct. 983 ("[E]xhaustion in cases covered by § 1997e(a) is now mandatory. All 'available' remedies must now be exhausted; those remedies need not meet federal standards, nor must they be 'plain, speedy, and effective.'") (quoting *Booth,* 532 U.S. at 739, 121 S.Ct. 1819). While acknowledging that a mandatory administrative exhaustion requirement "is at odds with traditional doctrines of administrative exhaustion,"

which provide that a litigant need not exhaust "where doing so would otherwise be futile," the Supreme Court "stressed" that it would not "read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise." *Booth*, 532 U.S. at 741 n. 6, 121 S.Ct. 1819.

 In light of the Supreme Court's teachings in *Booth* and *Porter*, this is not a case where "futility or other exceptions" should apply. Prison officials unquestionably had the authority to act on plaintiff's administrative appeal and to provide some form of relief. *See Booth*, 532 U.S. at 736 n. 4, 121 S.Ct. 1819 (suggesting that where prison officials lack authority "to provide any relief or to take any action whatsoever in response to a complaint," leaving the inmate "[w]ithout the possibility of relief," there might be "nothing to exhaust"). Plaintiff decries the rejection of his request for second-level review for "minor form violations," but he has not shown that those rejections foreclosed him from pursuing his appeal. The inmate appeals coordinator gave plaintiff instructions for correcting the defects in form that caused the rejection of his appeal, and those instructions are not so hyper-technical or flawed that plaintiff could not have complied with them and still submitted a timely appeal in the proper form. For example, plaintiff argues that his request for second-level review should not have been rejected for appending an additional page to the 602 form to explain the basis for his appeal, and that he should not have been required to "squeeze his issues" into a four-line section of the 602 form. A prison official's insistence that a claim be presented concisely and within the confines of the prescribed form does not render administrative remedies "unavailable."

Plaintiff might understand the administrative appeal procedure correctly, and the space provided on the 602 form might not have been sufficient to allow him to present his appeal effectively. He may be correct that defendants did not always adhere to the time limits governing their investigation and response. In addition, inmates' requests for medical care might have been routinely denied if prison physicians did not concur with the inmates' assessment of their medical needs. None of these factors, however, prevented or excused plaintiff from complying with the statutory mandate that he exhaust "such administrative remedies as are available" as a precondition to filing suit. *See* 42 U.S.C. § 1997e(a); *Booth*, 532 U.S. at 739, 121 S.Ct. 1819 (explaining that a court lacks "discretion to dispense with administrative exhaustion" under section 1997e(a) and cannot condition exhaustion on a requirement that the administrative remedy be "plain, speedy, and effective") (citations omitted).

In sum, defendants have met their burden to show that plaintiff did not exhaust his administrative remedies with respect to the claims alleged in his complaint, as required by section 1997e(a).

## Recommendation

It is recommended that defendants' motion be granted, and that the judgment be entered dismissing this action without prejudice.

January 14, 2005.